**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**No. 06-628 T**
**(Judge Thomas C. Wheeler)**

**WELLS FARGO & COMPANY and SUBSIDIARIES,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

**JOINT STATUS REPORT**

---

Pursuant to the Court's order dated January 3, 2008, the parties submit this status report addressing the progress of discovery to date and the discovery schedule. During the last conference regarding the discovery schedule in this case, the United States requested an additional six months to complete fact discovery. Plaintiff opposed the extension. The Court extended the schedule by three months, and indicated that it would conduct a status conference on March 27 to discuss the progress of discovery and the need for any further adjustment to the schedule, after reviewing this March 20 joint status report. The United States now requests an extension of at least three months for completing fact discovery, from July 30, 2008, to at least October 30, 2008, and a similar extension to all other deadlines. Plaintiff's position is that no change in the scheduling order should be made and requests that the Court set a trial date commencing on or about February 3, 2009.

**Plaintiff's Position with Respect to Status of Discovery and Scheduling Order**

Plaintiff believes that with the extension of the Scheduling Order that was made in January, 2008, Defendant will have had more than sufficient time to develop its case. Moreover, Plaintiff believes that extending the discovery period would only permit Defendant to further delay the point at which Defendant attempts to focus its discovery on facts related to specific legal theories. Accordingly, Plaintiff opposes any further extensions to the schedule and requests that the Court set a trial date commencing on or about February 3, 2009.

Defendant has been developing its legal theories regarding transactions similar in structure to those at issue here well before this particular case was filed. In February, 2005, Defendant notified taxpayers that it considered these sale-leaseback transactions abusive. I.R.S. Notice 2005-13, 2005-1 C.B. 630 (February 28, 2005). A Coordinated Issue Paper dealing with these issues was released on June 29, 2005. Importantly, Defendant's pronouncements indicate that the Defendant bases its position on the basic structure rather than rather than on minute details of individual transactions.

In addition, prior to the filing of this case, Defendant already had developed substantial factual information regarding each of the transactions at issue. In the course of its federal income tax audits of Plaintiff, Defendant has been receiving detailed information regarding the leasing transactions at issue since at least 2002. Defendant has reviewed and disallowed the tax consequences of the leases in issue here in every taxable year between 1999 and 2004 and is currently auditing 2005-2006. As a result of these audits, when Plaintiff filed its Complaint on September 7, 2006, Defendant had in its possession the extensive documentation relating to all of these transactions, including the operative legal documents, credit approval reports, appraisals,

pricing runs, etc, and had knowledge of the identities of all lessees and most, if not all, other participants in these transactions.

The amounts Defendant disallowed with respect to each transaction in each taxable year through 2004, the last year for which an audit is complete, match exactly what Plaintiff's records show as the tax effects of the transactions. Further, the Revenue Agent's Reports contained detailed schedules showing the tax and financial accounting treatment for each of these transactions. Plaintiff is unaware of any basis for a dispute between the parties regarding the amounts in issue.

Rule 26 disclosures were made on April 16, 2007. In addition to producing a substantial number of documents, Plaintiff identified the four key employees of the Plaintiff who were extensively involved in the transactions in issue. Plaintiff further indicated that once the parties had agreed on which leases would be suitable as representative transactions, it would supplement the disclosure with additional individuals who only have knowledge regarding specific transactions.

Defendant's disclosure stated

> As, you know, Well Fargo provided a substantial amount of documents concerning the SILO transactions at issue to the IRS during the audit. At this time, the United States does not have any other documents other than those provided by Wells Fargo to disclose pursuant to Rule 26.

Defendant provided no individual names but indicated a list of entities, by transactions, that might have employees or documents upon which Defendant might rely. Among the entities listed are all of the lessees in the transactions in issue.

On June 28, 2007, Plaintiff received the United States' First Set of Interrogatories and First Requests for Production. On July 30, 2007, Plaintiff provided a 169-page Response to the United States' First Set of Interrogatories and a Response to the United States' First Requests for Production.

On September 28, 2007, Plaintiff supplemented it document response by providing two DVDs containing WPF062726-WPF164385 and a 125-page schedule listing the document ranges by transaction. On October 4, 2007, Plaintiff further supplemented its response to the United States' First Request for Production by producing WPF164386-WPF178038. On November 5, 2007, Plaintiff provided a 54-page First Supplemental Responses to United States' First Set of Interrogatories.

Plaintiff's First Request for Production of Documents was served on Defendant on August 1, 2007, and Plaintiff's First Set of Interrogatories was served on Defendant on August 2, 2007. The status of this discovery was the subject of the status conference on March 14, 2007.

Defendant issued additional discovery on November 29, 2007. This discovery primarily dealt with the tax and accounting treatment of the transactions including taxable years after the years in issue. On February 20, 2008, Wells Fargo provided its Response to the United States' Second Requests for Production and produced WPF178039-WPF188135. On February 21, 2008, Plaintiff provided a 23-page Response to United States' Second Set of Interrogatories.

As Plaintiff has advised Defendant's counsel, Defendant already possessed information enabling it to produce reports that exactly match Plaintiff's tax and financial accounting of these transactions. Plaintiff is unaware of any basis for a dispute between the parties regarding these amounts. To verify this, Plaintiff served its Second Request for Production of Documents on

Defendant on February 22, 2008, to obtain the IRS administrative file in this matter, and any other documents in Defendant's possession that show any basis for disagreement regarding the amounts at issue.

Plaintiff has already provided Defendant with over 188,000 pages of documents and over 250 pages of narrative responses to Interrogatories.

On March 3, 2008, Defendant issued a Third Set of Interrogatories focused on whether a single transaction or transactions should be the basis for deciding the tax treatment of all of the transactions. While Plaintiff will in due course provide a formal response to this interrogatory, Plaintiff has attempted to discuss a narrowing of the transactions on numerous occasions. In its letter of August 29, 2007, Plaintiff proposed a procedure for each party to select two transactions. In recognition that Defendant's counsel had less knowledge about the transactions, the proposal would have allowed Defendant to substitute two other transactions if upon further review Defendant regarded those transactions as unrepresentative. However, Defendant has wanted to complete its discovery on all transactions before attempting to select any leases to focus on.

Plaintiff regards the dispute between the parties as a dispute about the tax consequences of the basic structure of these leases rather than a dispute about the tax impact of the specific terms of one transaction. However, the August 29th letter also discussed what might be necessary in the event that, contrary to Plaintiff's expectations, the Court resolved the tax treatment based on a factor that was transaction specific.

At this point, Plaintiff doubts that the parties will agree on a sample set of transactions in time to permit orderly trial development. Hence, Plaintiff has been considering how to proceed absent agreement on a sample. The legal rights and obligations of Plaintiff are governed by the

documents. While an understanding of the business context is necessary, Plaintiff at this time does not believe that witnesses specific to each transaction are necessary. Plaintiff is in the business of leasing and follows consistent practices with respect to its lease portfolio. Plaintiff's employees, identified in the April 16, 2007 Rule 26 disclosure, could address a few transactions in detail and explain that the remaining leases were treated similarly. Witnesses from selected lessees and advisors associated with those transactions could also testify to provide context to the transactions. However, it does not appear necessary to have witnesses from each transaction in order to establish the tax consequences of these transactions.

While the record would include documentation from all of the transactions, Plaintiff does not believe that will pose an undue burden on the Court. Structurally, the transactions are similar. Once the Court understands the basic structure of a few transactions, review of individual documents for each transactions only becomes important if one of the parties asserts that the differences between the transactions are relevant to the tax treatment.

Plaintiff will supplement its Rule 26 disclosure to identify the leases that it intends to use to illustrate the operation of these transactions and the specific individuals that it would anticipate calling with knowledge of those specific transactions. To the extent Defendant believes that witnesses from other transactions are necessary to provide a complete picture, it can amend its Rule 26 disclosure to include such individuals.

On December 7, 2007, Defendant issued subpoenas to Deloitte & Touche and KPMG for documents in their possession.

Following the status conference on January 3, 2008, Defendant issued subpoenas to 16 transit agency lessees on January 3, 2008 and to nine advisors on January 10, 2008.

Defendant was aware of all of these entities well before January 2008. Defendant's Rule 26 disclosure on April 16, 2007, listed all of the lessees and the documents produced in the IRS audit identified all of the advisors to whom subpoenas have been issued. The subpoena are extremely broad. For example, each subpoena has asked for "All documents relating to the Leasing Transactions [the transactions at issue], including but not limited to [11 specific categories]".

Plaintiff opposes extension of the period for discovery and requests that a trial date be set on or about February 3, 2009. As noted above, Defendant has been gathering extensive information on the transactions in issue since at least 2002. As Defendant's Rule 26 disclosure indicates, Defendant's counsel had access to that material no later than April 16, 2007. Defendant's Rule 26 disclosure lists all the lessees, including all of the foreign lessees. Similarly, Defendant's Rule 26 disclosure recognizes that Defendant had documents provided in the audit, which included appraisals. In addition, Plaintiff's discovery response on July 30, 2007, identified the appraisers by transaction.

A Preliminary Scheduling Order was entered on March 27, 2007. Defendant has already had almost a year to issue discovery and still has over four months before the end of fact discovery. The fact that Defendant has not issued discovery on foreign lessees and appraisers is not a reason to extend the schedule. The time has come to take the information that has been gathered, focus on the materials relevant to the legal principles and proceed to trial. Extending discovery will only delay the day that the parties come to grips with the facts in the case while unnecessarily increasing the burden on the Plaintiff and third parties.

While Plaintiff is willing to discuss the appropriate number of depositions, at this time no agreement has been reached to expand the number of depositions set forth in RCFC 30(a)(2)(A).

**The Status of Defendant's Fact Discovery**

The United States is in the process of conducting discovery on all 27 of the SILO (sale-in, lease-out) transactions at issue in this case. Discovery on all of the transactions is necessary because we need to understand all of the transactions in order to agree that any could be representative, and in order to select such representative transactions. In addition, because no representative transactions have been agreed upon to date, we need to discover facts regarding all of the transactions in order to prepare for a possible trial of all 27 transactions, although we continue to hope, and intend, that representative transactions will be selected for purposes of summary judgment and/or trial. Several months ago, plaintiff indicated that it intended to propose two SILO transactions as representative transactions – one involving buses and one involving train cars. To date, plaintiff has not told the United States which transactions it has in mind, despite several requests.[1] We served an interrogatory on plaintiff on March 7, 2008, inquiring about its view of the similarity of the transactions at issue for federal tax purposes, and its proposals for any representative transactions. Plaintiff has not yet submitted its response to this interrogatory.

The United States has issued five discovery requests to plaintiff, and received four responses to date. To support its tax refund claim, plaintiff has made numerous factual allegations, with regard to each transaction, including allegations concerning the purported

[1]The United States is surprised by Wells Fargo's statement above that it does not believe the parties will agree on representative transactions. It had not communicated that before.

economic return, the pre-tax yields, the accounting treatment under FASB, the value of the assets, the risks involved, the incidence of the benefits and burdens of ownership of the assets and the financial strength of the lessees. The Untied States is entitled to conduct discovery about these allegations. To date, plaintiff has partially responded to the United States' requests but has failed to provide some of the basic information requested. The United States has contacted plaintiff's counsel regarding the adequacy of certain responses, and the parties are continuing to discuss these issues. These discovery requests to plaintiff are intended to elicit information about plaintiff's actual implementation of the SILO transactions at issue.

As both parties indicated in the Joint Preliminary Status Report, because of the large number of transactions and large number of entities involved in each one of the transactions, substantial discovery is required in this case, including discovery from foreign and domestic third-parties. (See JPSR, p. 7) The United States has issued 32 third-party subpoenas to date seeking documents relevant to the transactions at issue from outside auditors, transit agencies that participated in the transactions as counter-parties, consultants who put together the transactions, and outside appraisers of the assets that were the subject of the transactions.[2] These subpoenas seek substantial information from the other entities involved in the transactions that was not available to the IRS in its audit of plaintiff. This discovery is necessary to adequately defend plaintiff's claims about the 27 transactions. For example, plaintiff has specifically alleged that the factual findings of the appraisers in each of the 27 transactions – including opinions about the fair market value of the assets and the likelihood that the lessees in the SILOs will

[2]It is the United States' understanding that plaintiff has also informally obtained discovery from the transit agencies involved in the SILOs.

exercise a purchase option – support their tax claims for each transaction. The United States is entitled to conduct discovery to evaluate these opinions, and plaintiff's claims.

We have received a substantial amount of responsive documents and numerous CDs with electronic records to date from third-parties, and are in the process of reviewing them. We have not yet received complete responses from 23 of the third parties, and expect to receive numerous additional boxes of documents and CDs of electronic records in the next several weeks. The subpoenas to the auditors, transit agencies, and consultants have been outstanding for several weeks. The responses to those subpoenas have been delayed as a result of the entities trying to locate documents for transactions that were entered into 5 to 10 years ago. The appraiser subpoenas were issued this week, and responses are expected in late April.

Counsel for the United States are in the process of reviewing the documents that we have received from plaintiff and third parties, and determining whether additional documents are needed to complete our understanding of the transactions at issue, and adequately prepare a defense to plaintiff's claims. At present, we anticipate serving the following additional written discovery. First, we expect to serve discovery requests on the foreign entities involved in the eight transactions that involve foreign assets. Foreign discovery is considerably more complicated than domestic discovery, and thus may take more time. Second, we plan to issue document subpoenas to the lending institutions involved in each of the transactions. Third, we expect to serve additional written discovery requests on plaintiff, including requests for admissions, interrogatories, and document production requests. Finally, we may determine that additional discovery is needed as our review of the transactions continues.

The United States also anticipates conducting numerous fact depositions, although the exact number has not yet been determined. Estimating conservatively, the United States will seek to depose 30 individuals at a minimum. The deponents are located across the United States and in foreign countries. Accordingly, the United States expects to devote substantial time to this segment of fact discovery.

The United States disagrees with plaintiff's claim that the United States has had sufficient time to conduct discovery of the 27 transactions at issue in this case. The United States has diligently pursued the substantial discovery required in this case, and it has endeavored to pursue discovery in an orderly and logical manner by first pursuing document discovery before proceeding with depositions. It would not be effective or possible for the United States to conduct all necessary discovery at once, simultaneously. The United States believes that allowing time for full and adequate discovery now will permit the parties to propose representative transactions to the Court, and then allow the Court to consider the disputed issues on a summary judgment motion or at trial in a more manageable posture.

In addition to the foregoing affirmative discovery by the United States, we have responded to two discovery requests by plaintiff. Plaintiff's discovery requests are primarily aimed at discovering facts regarding the Federal Transit Administration ("FTA"). We have produced approximately 14,000 pages of documents, and are preparing for a RCFC 30(b)(6) deposition of a current FTA employee.[3] As mentioned to the Court on March 14, 2008, we are discussing with Plaintiff the scope of the requested RCFC 30(b)(6) deposition, and our

---

[3]Plaintiff's claims above that discovery of the factual details of each transaction is unnecessary seems at odds with its discovery request from the FTA.

objections to some of the topics. Plaintiff has indicated that it will seek to depose at least two former FTA employees. Counsel for the United States has spent considerable time in discussions with plaintiff's counsel regarding the scope and relevance of their discovery requests, and the adequacy of our responses. We are hopeful that any disputed issues that remain can be resolved by the parties, but, as discussed during the conference with the Court on March 14, 2008, there may be litigation over some of the issues that plaintiff has raised.

**Defendant's Request for Amendment of the Discovery Schedule**

During the last status conference, when the United States informed the Court that it believed an additional six months for discovery was needed, this Court extended the schedule by three months and stated that it would consider further extensions at the next status conference. The United States respectfully requests that the Court now extend the current deadline for completing fact discovery, July 30, 2008, and all other deadlines, by at least three months in order to permit the United States to complete the necessary affirmative discovery outlined above. This case involves 27 separate transactions that the IRS has determined are abusive, and because of the multi-year effect of these transactions, hundreds of millions of dollars of disputed tax benefits are at issue. We believe a three month extension is a reasonable request in light of the volume and scope of the transactions at issue, and the importance of the issues.

Respectfully submitted,

*s/ Joel V. Williamson*
JOEL V. WILLIAMSON
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
TEL: (312) 701-7229
FAX (312) 706-9187
jwilliamson@mayerbrown.com

Attorney for Plaintiff

*s/ Cory A. Johnson*
CORY A. JOHNSON
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
TEL: (202) 307-3046
FAX: (202) 514-9440
Cory.A.Johnson@usdoj.gov

JOHN A. DICICCO
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief
JENNIFER P. WILSON
Trial Attorney
RICHARD H. BOWLES
Trial Attorney

*s/ Steven I. Frahm*
Of Counsel

Attorneys for the United States

March 20, 2008