IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **WELLS FARGO & COMPANY and SUBSIDIARIES,** | ) | |
| **Plaintiff,** | ) | **No. 06-628 T** |
| **v.** | ) | **Judge Thomas C. Wheeler** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Pursuant to RCFC 37(a)(2)(B), Plaintiff moves this Court to compel Defendant to produce the documents responsive to Plaintiff's Second Request for Production of Documents. Plaintiff served Plaintiff's Second Request for Production of Documents on February 22, 2008. On March 31, 2008, Defendant served on Plaintiff its Response to Plaintiff's Second Request for Production of Documents alleging the request is overbroad, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant also asserts that some responsive documents may be privileged.

## BACKGROUND

This dispute involves the appropriate tax treatment of a number of leveraged lease transactions that Plaintiff entered into in the regular course of its business. Although this case involves only the tax consequences for the 2002 taxable year, some of the lease transactions were entered into in earlier tax years and the effects of those leases were included in the 2002 tax return as originally filed. Defendant, through the Internal Revenue Service (the "IRS"), has audited Plaintiff's Federal income tax returns, including an intensive examination of the lease

transactions in issue. For each of the taxable years since 1999 for which the IRS has completed its audit of Plaintiff, the IRS has proposed disallowing the tax treatment claimed by Plaintiff for these lease transactions. While Plaintiff and the IRS have disagreed about the tax consequences of these transactions, they have always agreed exactly on the numerical impact on taxable income in the event that the lease transactions are or are not respected for tax purposes.

The Answer in this case also indicates that no dispute existed as to the impact on taxable income from the disputed transactions. Paragraph 98 of the Answer "[a]dmits that the disallowance of tax benefits associated with the asserted Sale-Leaseback Transactions resulted in an increase in Plaintiff's 2002 taxable income of $115,174,203." Similarly, in paragraph 9 of the Complaint, Plaintiff pled that

> As part of the audit, the IRS agreed to adjustments which reduced Wells Fargo's taxable income by $189,025,447. The IRS, however, disputed Wells Fargo's tax treatment of the Sale-Leaseback Transactions and, as a result, proposed an increase in Wells Fargo's taxable income in the amount of $115,174,203, which resulted in a net reduction of taxable income of $73,851,244.

The Answer at paragraph 9 "admits that the IRS proposed adjustments that resulted in a net reduction of income in the amount of $73,851,244. . . ."

Defendant issued its Second Request for Production and its Second Set of Interrogatories on November 29, 2007 (copies attached as Exhibits A and B). On February 20, 2008, Wells Fargo provided its Response to the United States' Second Request for Production and produced WPF178039-WPF188135. On February 21, 2008, Plaintiff provided a 23-page response to the United States' Second Set of Interrogatories.

Defendant's second set of discovery primarily dealt with the tax and accounting treatment of the disputed transactions, including the tax and accounting reporting in all taxable years after the years in issue. Since Plaintiff had not been aware of any disagreement concerning the amounts that had been reported for tax and accounting purposes, Plaintiff is concerned that Defendant had either in the course of its audit or discovery in this case developed issues that were not disclosed in the Revenue Agent's Report that was provided to Plaintiff.

Accordingly, in order to determine whether Defendant had gathered information that it might rely on to disallow the claimed effects of these transactions, including information that might be relied upon to challenge the heretofore unchallenged numerical effects of the transactions, Plaintiff served Plaintiff's Second Request for Production of Documents on February 22, 2008 (copy attached as Exhibit C). Plaintiff requested:

> All documents which Defendant anticipates relying on to show that the amounts reported by the Plaintiff for Federal Income Tax and financial accounting purposes relating to the Transactions were different than the amounts set forth in the attachments to the Revenue Agent's Report.

In addition, Plaintiff requested the administrative files for the Federal Income Tax audit of Plaintiff for the taxable years 1999 and 2000 and for the taxable years 2001 and 2002. The IRS prepares an administrative file in the course of an audit. This file would contain the information that the IRS considered in arriving at its decision. It would also include various workpapers showing how the adjustments were computed. Hence, a review of such files should reveal the reasons for the disallowance, what information was relied on in reaching that conclusion, and the numerical tax impact of the disallowance and thereby would enable Plaintiff to seek out admissible evidence to rebut conclusions with which it disagrees.

When no response was received by March 25, 2008, Plaintiff inquired regarding the status of its request. Defendant indicated that it regarded the request as improper and would not be producing the requested documents. On March 27, 2008, Plaintiff advised Defendant and the Court that it intended to pursue a Motion to Compel with respect to Plaintiff's Second Request for Production of Documents.[1] On March 29, 2008, Plaintiff sent Defendant an email explicitly suggesting that to the extent that the requested materials included privileged information, Defendant withhold such documents or make appropriate redactions and supply a privilege log. On March 31, 2008, Defendant served on Plaintiff its Response to Plaintiff's Second Request for Production of Documents (copy attached as Exhibit D) alleging the request is overbroad, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant also asserts that some responsive documents may be privileged.

## ARGUMENT

The scope of permissible document discovery is a familiar standard. Under the federal rules, "[t]he information sought need not be admissible at the trial"; documents are discoverable if the request "appears *reasonably calculated to lead to the discovery of admissible evidence*." Fed. R. Civ. P. 26(b)(1) (emphasis added); see *Morse/Diesel, Inc. v.. Fidelity & Deposit Co.*, 122 F.R.D. 447, 449 (S.D.N.Y. 1988).

[1] Plaintiff's First Request for Production of Documents was served on Defendant on August 1, 2007, and Plaintiff's First Set of Interrogatories was served on Defendant on August 2, 2007. As was discussed during the status conferences on March 14, 2008 and March 27, 2008, in an effort to limit the areas of dispute, Plaintiff will first conduct a Rule 30(b)(6) deposition in order to narrow the areas upon which the Court may need to rule. However, Plaintiff's Second Request for Production of Documents seeks entirely distinct information. Accordingly, the pending deposition will not eliminate the need to rule on this motion.

## A. Plaintiff's Requests are Relevant and Reasonably Calculated to Lead to the Discovery of Admissible Evidence.

Defendant objects to Plaintiff's Second Request for Production of Documents as irrelevant and not reasonably tailored to lead to the discovery of admissible evidence. Plaintiff contends that the request is highly relevant and either will lead to admissible evidence or will establish that certain facts are not in dispute.

The discovery of admissible evidence requires an understanding of the facts and theories on which the other party intends to rely. Defendant's Rule 26 disclosure, filed April 16, 2007, did little to assist Plaintiff in identifying what documents Defendant might rely upon.

> As you know, Wells Fargo provided a substantial amount of documents concerning the SILO transactions at issue to the IRS during the audit. At this time, the United States does not have any documents other than those provided by Wells Fargo to disclose pursuant to RCFC 26. We assume you kept copies of those documents, and do not want us to copy and send back to you the documents you originally provided to the IRS. If you do, please let me know.

Hence, Plaintiff only knows that Defendant may rely on all or some of the materials furnished to it during the audit.

Plaintiff was concerned that discovery directed at eliciting specific documents upon which Defendant anticipates relying would be fruitless because the response would be that everything was still in a state of flux until all discovery was done. Defendant's response to Request No. 12, one of the requests in issue, confirmed Plaintiff's concerns.

> **REQUEST NO. 12:** All documents which Defendant anticipates relying on to show that the amounts reported by the Plaintiff for Federal Income Tax and financial accounting purposes relating to the Transactions were different than the amounts set forth in the attachments to the Revenue Agent's Report.
>
> **RESPONSE:** The United States objects to this request on the grounds that it is vague, ambiguous and seeks irrelevant

> information not reasonably tailored to lead to the discovery of admissible evidence. The United States is currently seeking discovery from Plaintiff concerning Plaintiff's financial and tax treatment of the SILO transactions at issue. That discovery is ongoing and includes discovery seeking to establish the tax benefits claimed by Plaintiff and the financial benefits and costs to Plaintiff, and the assumptions related to those claimed benefits and costs. The United States is also seeking discovery from Plaintiff's financial auditors and will produce to Plaintiff all documents it receives from them. These investigations may inform the preparation of the government's factual defenses and assertions at trial. When discovery is complete, and in accordance with the pretrial exchanges the Court will direct, Defendant will submit its Exhibit List to Plaintiff.

Obviously, waiting until exhibit lists are exchanged would severely limit Plaintiff's ability to develop admissible evidence to address any challenges as to the amount of the impact on taxable income of these transactions. If Defendant has information that it intends to use to challenge the heretofore unchallenged amounts reported for tax and accounting purposes, Plaintiff clearly needs to know what that information is.

The other two requests at issue request the administrative file with respect to these lease transactions. These files contain workpapers that will permit verification of the amounts that are set forth in the Revenue Agent's Reports and a determination of what documents or other information support those amounts. Since the schedules that are attached to the reports appear to agree with Plaintiff's understanding of the tax consequences of these transactions, the workpapers should assist in identifying specific documents or other evidence to rebut any challenges to the amount of the tax impact that Plaintiff contends results from these transactions.

In addition, these files are highly likely to provide Plaintiff with information about what specific documents Defendant will rely on at trial. While Defendant is continuing to conduct discovery and may still find documents that would support positions not relied upon by the IRS, such positions, if any, are likely to be in addition to rather than in place of the information that

the IRS relied upon. Accordingly, Plaintiff regards it as only prudent to plan for trial, assuming that Defendant will be relying upon the positions developed by the IRS. The requested administrative file should enable Plaintiff to determine the IRS' reasons for disallowing the tax effects of these lease transactions and what facts it previously relied upon to support those reasons. This, in turn, will allow Plaintiff to determine what additional admissible evidence it may need at trial to rebut these facts.

In particular, we expect that the workpapers in the administrative file clearly trace out the documents and other materials Defendant relied on when disallowing the tax reporting of these transactions used by Plaintiff. In the case of the audit for 1999-2000, the rebuttal filed by the IRS as part of the administrative appeal of the proposed disallowance stated

> The examiner did perform an analysis of each lease transaction. The analysis of each lease is contained in the audit workpapers and is available as needed. Due to the volume of information, (58 workpapers binders) the factual information for each lease was summarized in the report to simplify report preparation . . .

In addition, obtaining this information should be relatively simple. Plaintiff is requesting a specific file—albeit a large file—that should be readily identifiable to Defendant. To the extent any difficulty exists in identifying the appropriate file, Defendant could consult with the IRS agents who prepared it. Plaintiff knows that at least some of the agents who would have prepared these files are still employed by Defendant since they are currently auditing Plaintiff for subsequent taxable years. Moreover, Plaintiff would have expected these files to be already in possession of Defendant's counsel since these files would contain substantial information on the transactions in dispute. Hence, Plaintiff is unaware of any undue burden that would be involved in producing these documents.

**B. Potential Claims of Privilege Are No Reason for Not Producing Responsive Documents that Are Not Privileged.**

Defendant has alluded to the possibility that portions of the administrative file may contain privileged material. To the extent that there are privileged documents, the proper course is to produce the non-privileged documents, withhold the privileged ones, and list them on a privilege log. Withholding all documents is not a proper response.

## CONCLUSION

For the reasons set forth above, Plaintiff asks that this Court enter an ORDER compelling Defendant to produce all responsive documents.

Respectfully submitted this 4th day of April, 2008.

By: Joel V Williamson (WAS)
JOEL V. WILLIAMSON
Attorney of Record
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 701-7229

By: William A. Schmalzl
WILLIAM A. SCHMALZL
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 701-7225

## CERTIFICATE OF SERVICE

I, William A. Schmalzl, hereby certify that on this 4th day of April, 2008, I caused the foregoing Plaintiff's Second Request for Production of Documents to be served upon the United States of America by e-mail, to the following:

Cory A. Johnson
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
555 Fourth Street, N.W.
Washington, D.C. 20001
Cory.A.Johnson@usdoj.gov
*Counsel for Defendant*

By: [signature]
WILLIAM A. SCHMALZL
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 701-7225

**EXHIBIT A**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-628 T
(Judge Thomas C. Wheeler)

WELLS FARGO & COMPANY and SUBSIDIARIES,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

## UNITED STATES' SECOND REQUEST FOR PRODUCTION

NOV 29 2007

The United States requests, pursuant to Rules 26 and 34 of the Rules of the United States Court of Federal Claims (RCFC), that Plaintiff produce the documents described below for inspection and copying.

Consistent with the provisions of RCFC 34 that a production "request shall specify a reasonable time, place, and manner of making the inspection and performing the related acts, it is hereby specified that a representative of Plaintiff shall make such documents available for inspection and copying at the offices of Defendant's counsel, Cory A. Johnson, Room 8108, Judiciary Center Building, 555 4th Street, N.W., Washington, D.C. 20001 at 10:00 a.m., on December 28, 2007, or at such other time or location, and in such manner as is mutually agreed upon by both parties.

The documents produced shall be organized and labeled to correspond to the particular request to which they are responsive, and, as so organized and labeled, the documents shall be produced as they are kept in the usual course of business, to the extent possible. It is further requested that Plaintiff identify in its written response each document (or portion thereof) or category of documents withheld from production, and state with respect thereto the specific ground(s) for objection with sufficient particularity to permit the matter to be brought before the Court.

The definitions applicable to the United States' First Set of Interrogatories apply to the following Requests for Production.

The documents to be produced are as follows:

3. All documents identified, described, mentioned or referred to in your responses to the Untied States' Second Set of Interrogatories.

4. Organizational charts for plaintiff and any of its predecessors (including Norwest and First Security Corporation), subsidiaries, affiliates and divisions that participated or were involved in (a) reviewing and approving any of the Transactions; (b) implementing, executing and monitoring any of the Transactions; and (c) determining the financial, regulatory or tax reporting for any of the Transactions. Current organization charts and charts for the time period 1996 through 2003 should be produced.

5. All correspondence and documents reflecting communications with plaintiff's outside financial accountants and auditors concerning any of the Transactions.

6. All documents and work-papers relating to the financial reporting of the Transactions, including, but not limited to, all documents and work-papers relating to the application of FAS 13 and the potential or actual effect of FSP FAS 13-2.

7. All documents and work-papers relating to the reporting or potential reporting of the Transactions under FAS 109 and FASB Interpretation No. 48 ("FIN 48").

8. All correspondence, documents reflecting communication with, documents prepared by or for, and documents sent to or received from any bank or financial regulator or other regulatory body concerning any of the Transactions.

9. All documents and work-papers relating to the reporting or potential reporting of the Transactions for bank or financial regulatory purposes.

10. All correspondence and documents reflecting communications with plaintiff's tax return preparer or tax accountants for the tax years 1996 through 2006 concerning any of the Transactions.

11. All documents and work-papers relating to the reporting or potential reporting of the Transactions for federal tax purposes.

Respectfully submitted,

CORY A. JOHNSON
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
TEL: (202) 307-3046
FAX: (202) 514-9440
Cory.A.Johnson@usdoj.gov

RICHARD T. MORRISON
Acting Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief
JENNIFER P. WILSON
Trial Attorney

Of Counsel

November 27, 2007

CERTIFICATE OF SERVICE

I certify that service of the foregoing document has, this 29th day of November, 2007, been made on counsel for the plaintiff by mailing a copy thereof, in a postage prepaid envelope, to the following address:

Joel V. Williamson
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606

Katie M. Stevens

U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6440
Fax (202) 514-9440

EXHIBIT B

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-628 T
(Judge Thomas C. Wheeler)

WELLS FARGO & COMPANY and SUBSIDIARIES,

Plaintiff,
v.

THE UNITED STATES,

Defendant.

**UNITED STATES' SECOND SET OF INTERROGATORIES**

NOV 29 2007

The United States requests, pursuant to Rules 26 and 33 of the Rules of the United States Court of Federal Claims (RCFC), that plaintiff answer the following interrogatories, fully, in writing, and under oath, and return its responses within 30 days after service hereof.

If any part of these interrogatories cannot be answered in full, you are requested to answer to the extent possible, specifying the reason for your inability to answer the remainder and to state whatever information or knowledge you have concerning the unanswered portion. If an answer is based on information received from third parties, the answer should identify the source of the information. If an answer is an estimate, the answer should so state and describe how the estimate was made.

These interrogatories shall be deemed continuing, to the extent authorized in RCFC 26(e), so as to require supplemental answers as plaintiff obtains further information between the time the answers are served and the trial.

If the answer to any interrogatory is fully and fairly contained in a document from which the answer can be extracted without unreasonable difficulty, you may answer the interrogatory by attaching a copy of the document and attesting to its genuineness. If you answer an interrogatory in this way, please specify the documents (and pages) that contain the answer. The specification must be detailed enough to permit the defendant to find the requested information readily.

You must include in your answer to an interrogatory information which, while not within your own knowledge, is nonetheless within your custody or control or reasonably available to you, your attorney, your actuary, your accountant, or any other source from whom it may reasonably be secured. *See, e.g.*, *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1210-11 (8th Cir. 1973); *Cabot v. United States*, 35 Fed. Cl. 80, 83 (1996).

If plaintiff withholds any information from these responses based upon a claim of privilege, plaintiff is requested to identify the information withheld with sufficient specificity to allow defendant and the Court to evaluate the claim of privilege.

**DEFINITIONS**

The following definitions shall apply to these interrogatories unless otherwise noted:

A. "Document" means and includes all materials or data subject to production under RCFC 34(a) and all writings or recordings within the meaning of Fed. R. Evid. 1001. The term shall be broadly construed to include (but shall not be limited to) correspondence, electronic mail, notes, notations, contracts, brochures, agreements, deeds, leases, letters, memoranda, checks, bank statements, reports, analyses, projections, studies, records, corporate minutes, financial statements, financial records, accounting or audit work papers (including permanent work papers), spreadsheets, transcripts, recordings, and all other types of written or documentary

materials. It includes all originals, copies, and non-identical copies (whether by reason of handwritten notations thereon or otherwise), regardless of whether the information is stored on paper, in electronic form, or through any other medium.

B. The term "person" shall be construed to mean and include an individual, trust, estate, partnership, company, corporation, governmental body, or other entity.

C. The words "identify," "identifying," or "identity":

(i) when used in reference to a natural person, include the full name, present home and business address, present or last known employer, and present business and home telephone numbers of the individual;

(ii) when used in reference to an entity other than a natural person, include that entity's full name, the present or last known address of its principal office or place of business, the type of entity (e.g. corporation, partnership, unincorporated association, etc.), and present business telephone number of that entity;

(iii) when used in reference to a document, include the (1) nature of the document; (2) the name of each author or person by whom the document was written, prepared, recorded, made, or signed; (3) the dates each person or author identified participated in the writing, preparation, recording, marking or signing of the document; (4) the organization or entity which issued or promulgated the writing; (5) the date of the document; (6) to whom it was addressed or furnished; (7) the number of pages in the document; (8) the subject matter of the document; and (9) the name and

current or last-known business and residential address and telephone numbers of each person having custody, control, or possession of such document.

D. The term "Transaction(s)" refers to the transactions identified in paragraphs 39 and 50 of the Complaint.

E. The term "2003 Transactions" refers to the transactions identified in paragraph 45 of the Complaint.

F. The term "plaintiff" refers to Wells Fargo & Company and Subsidiaries ("Wells Fargo"), and all presently or formerly affiliated entities.

G. The term "representative" includes, but is not limited to, Plaintiff's counsel, employees, agents, and/or advisors.

H. The terms "you" and "your" means Wells Fargo and its representatives, and all presently or formerly affiliated entities.

I. If you intend to produce any documents or records in electronic form in response to these interrogatories, please call Cory A. Johnson (202-307-3046), counsel for the United States, to discuss the format for such a production.

## INTERROGATORIES

4. For each Transaction, identify and describe in detail the actual amount and date of all purported equity investments, loans, rent payments, debt service payments, deposits, purchases or provisions of collateral or security, pledges, fees and transactional costs, and any other transfers or receipts of money, funds, securities or other assets that have been made or received to date by plaintiff and other parties to the Transactions, and identify the documents that

reflect those payments, deposits, pledges, transfers or receipts. Please state in your answer the actual transferor, recipient and custodian, and whether transfers or payments were actually made or constructively made through accounting entries.

5. For each Transaction, describe in detail the amounts and dates of all purported equity investments, loans, rent payments, debt service payments, deposits, purchases or provisions of collateral or security, pledges, fees and transactional costs, and any other transfers or receipts of money, funds, securities or other assets that plaintiff and other parties to the Transaction are currently obligated to make or receive in the future, and identify the documents that contain the terms or formulas that will determine the amount and date of the payments, deposits, pledges, transfers or receipts. Please state in your answer the actual transferor, recipient and custodian, and whether transfers or payments will be actually made or constructively made through accounting entries.

6. For each Transaction, describe in detail the amounts and dates of all purported equity investments, loans, rent payments, debt service payments, deposits, purchases or provisions of collateral or security, pledges, fees and transactional costs, and any other transfers or receipts of money, funds, securities or other assets that you contend may occur or be required in the future by plaintiff and other parties to the Transaction, and identify the documents that contain terms or formulas that will determine the amount and date of the payments, deposits, loans, pledges, transfers or receipts. Please describe in your answer all alternative sets or scenarios, if any, of such payments, transfers, deposits, loans or receipts, and the different elections or events that would cause, or be required for, each alternative.

7. For each Transaction, identify the original governing agreements and documents, any amendments or modifications to those agreements and documents, and the agreements and documents that you believe currently govern each Transaction, including the payment of, transfer of, receipt of or right to any funds, securities or assets in the future.

8. For each Transaction, identify the "ABC" files or reports, or other reports, files or documents setting forth or summarizing the actual or potential cash-flows, revenue, liabilities, income, expenses, deductions, costs, transfers and receipts of funds or assets, fair market value of assets, rates of return, financial accounting treatment, tax treatment, or other assumptions, terms or projections for the Transaction, that plaintiff reviewed and/ or relied upon in deciding whether to enter into the Transaction.

9. For each Transaction, identify the "ABC" files or reports, or other reports, files or documents, that you believe accurately set forth, in whole or part, the actual or potential cash-flows, revenue, liabilities, income, expenses, deductions, costs, transfers and receipts of funds or assets, fair market value of assets, rates of return, or other assumptions, terms or projections for the Transaction.

10. Describe in detail, by transaction and year, how each of the Transactions has been reported by plaintiff to date for financial reporting purposes, including the items and amounts of income, revenue, expense, loss, asset, reserve or liability reported, and identify all documents reflecting such reporting. Include in your answer the assumptions plaintiff made as part of determining the appropriate financial reporting treatment and whether plaintiff considered each item and amount to be "material" for financial reporting purposes.

11. Describe in detail, by transaction and year, how each of the Transactions has been reported to date for bank or financial regulatory purposes by plaintiff and any affiliate of plaintiff, including the items and amounts of income, revenue, expense, loss, asset, liability or reserves reported, and identify all documents reflecting such reporting. Include in your answer the classification of risk for each reported asset and the classification (or capital tier) for each reported liability.

12. Describe in detail, by transaction and year, how each of the Transactions has been reported for federal tax purposes by plaintiff and any affiliate of plaintiff on federal tax returns for tax years 1997 through 2006, including, but not limited to, the amounts and type of any deduction, loss, gain, income, revenue, credit, basis or tax benefit. Identify the tax returns and specific sections of those tax returns that reflect the reporting and any supporting work-papers. Include in your answer any assumptions made as part of determining the appropriate tax treatment and reporting.

13. Identify the individuals, whether employed by plaintiff or a third-party, who participated in determining how the Transactions would be reported for financial reporting purposes for the years 1996 through 2006.

14. Identify the individuals, whether employed by plaintiff or a third-party, who participated in determining how the Transactions would be reported for bank or financial regulatory purposes for the years 1996 through 2006.

15. Identify the individuals, whether employed by plaintiff or a third-party, who participated in determining how the Transactions would be reported for federal tax purposes for the years 1996 through 2006.

Respectfully submitted,

CORY A. JOHNSON
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
TEL: (202) 307-3046
FAX: (202) 514-9440
Cory.A.Johnson@usdoj.gov

RICHARD T. MORRISON
Acting Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief
JENNIFER P. WILSON
Trial Attorney
RICHARD H. BOWLES
Trial Attorney

Of Counsel

November 29, 2007

CERTIFICATE OF SERVICE

I certify that service of the foregoing document has, this 29th day of November, 2007, been made on counsel for the plaintiff by mailing a copy thereof, in a postage prepaid envelope, to the following address:

Joel V. Williamson
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606

Katie M. Devens

U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6440
Fax (202) 514-9440

EXHIBIT C

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WELLS FARGO & COMPANY and SUBSIDIARIES, Plaintiff, | ) | No. 06-628 T |
| v. | ) | Judge Thomas C. Wheeler |
| THE UNITED STATES, Defendant. | ) | |

**PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS**

The Plaintiff, Wells Fargo & Company and Subsidiaries ("Wells Fargo"), pursuant to RCFC 34 requests that the Defendant, the United States of America ("United States") produce for inspection and copying the documents described below within thirty (30) days of service hereof and in accordance with the following Instructions and Definitions. Defendant shall produce such responsive documents in accordance with the Instructions and Definitions that follow at the offices of Mayer Brown LLP, 71 S. Wacker Drive, Chicago, Illinois 60606.

**INSTRUCTIONS**

1. The production of documents and responses to these Requests for Production shall be made in accordance with RCFC 34 and the remainder of the Instructions set forth below.

2. Restate each Request for Production in the written response followed immediately by the response to each Request.

3. Each Request for Production is directed to the United States as defined in paragraph one of the Definitions.

4. Each Request for Production requires the production of all responsive documents in the United States' possession, custody or control.

5. The documents and records produced shall be organized and labeled to correspond to the particular Request(s) for production to which they are responsive and as so organized and labeled, the documents and records shall be produced as they are kept in the usual course of business, to the extent possible.

6. Each Request for Production requires the production of all non-identical copies including drafts and all copies upon which notes or other markings have been made.

7. If the United States objects to any part of a Request for Production, the United States shall specify the basis of its objection with particularity. Each part of said Request for Production shall be treated separately. If an objection is made to one part of a Request for Production, the United States shall produce all documents sought by the remainder of that Request. If an objection is made on the basis that the Request for Production or part thereof seeks information that is beyond the scope of discovery, the United States shall answer to the extent that the Request for Production is not objectionable.

8. Each document shall be produced in its entirety. If a responsive document cannot be produced in full, it shall be produced to the extent possible and the United States shall provide an explanation as to why production of the remainder is not possible, including but not limited to the effort made by the United States to produce the document.

9. If a document is no longer in the United States' possession, custody or control, the United States is required to: (a) identify and describe the document, including the date, author, recipient(s), number of pages, and subject matter of the document, (b) specify when such document was most recently in the unites States' possession, custody or control, (c) specify what disposition was made of the document and (d) identify the person or entity that presently possess or controls such document.

10. If a document has been destroyed, the United States is required to: (a) identify and describe the document, including the date, author, recipient(s), number of pages, and subject matter of the document, (b) specify when such document was most recently in the United States' possession, custody or control, (c) specify the date of destruction, identify the person who destroyed the document, (d) identify the person who directed that the document be destroyed, and (e) state the reason for the document's destruction.

11. If a Request for Production calls for the identification of a document as to which the United States claims a privilege or protection as a ground for non-production, the United States shall set forth for each document:

(a) The date of the document;

(b) The name, title and job or position of the document's author;

(c) The name, title and job or position of the document's sender;

(d) The name, title and job or position of every recipient of the document;

(e) The description of the nature and subject matter of the document and any attachments or appendices;

(f) The number of pages of the document and any attachments or appendices;

(g) The legal and factual basis for the privilege or protection asserted sufficient for Wells Fargo and the court to evaluate the applicability of the privilege or protection asserted; and

(h) The name, title and job or position of all persons on whose behalf the privilege or protection is asserted.

12. If, in responding to these Requests for Production, the United States encounters any ambiguity in construing either a Request or an Instruction or Definition relevant to it, the United States shall set forth the matter deemed ambiguous and the construction relied upon in responding to the Request.

13. Each Request for Production shall be construed independently and not limited by any other Request.

14. Unless otherwise indicated, the relevant time period for the Requests for Production is January 1, 1990 to the present.

15. A plural noun shall be considered a singular noun, and a singular noun shall be construed as a plural noun, whenever necessary to bring within the scope of the Interrogatory all responses that might otherwise be construed to be outside its scope.

16. Words of masculine or feminine gender shall include masculine, feminine or neuter genders as the context requires, whenever necessary to bring within the scope of the Interrogatory all responses that might otherwise be construed to be outside its scope.

17. Each Request for Production is continuing in nature. If, after responding to these Requests, the United States obtains or becomes aware of additional information or documents responsive to any Request, such information or documents shall be promptly produced in accordance with the Instructions and Definitions contained herein.

## DEFINITIONS

Notwithstanding any Definition stated below, each word, term or phrase used in the following Requests for Production is intended to have the broadest meaning permitted under the RCFC.

1. "Defendant" and "United States" shall refer to the United States Government, including, but not limited to the Internal Revenue Service, the Treasury Department, the Department of Justice, the Department of Transportation, and the Federal Transit Administration (and its predecessor the Urban Mass Transit Administration) and their present and past officials, agents, employees, analysts, counsel, experts, auditors, specialists and other persons employed, consulted, utilized, and otherwise acting on behalf of such agencies in the context of the matters at issue in this action.

2. "Plaintiff" or "Wells Fargo" shall refer to Wells Fargo & Company and Subsidiaries.

3. "FTA Transactions" shall refer to the leasing transactions described in Paragraph 39 of Plaintiff's Complaint.

4. "2003 FTA Transactions" shall refer to the leasing transactions described in Paragraph 45 of Plaintiff's Complaint.

5. "QTE Transactions" shall refer to the leasing transactions described in Paragraphs 49-51

6. "Transactions" shall refer to the FTA Transactions, the 2003 FTA Transactions, and the QTE Transactions, collectively.

7. "Revenue Agent's Report" shall refer to the report dated April 22, 2005 issued by the Internal Revenue Service in connection with the Federal Income Tax audit of Wells Fargo for the taxable years 2001 and 2002.

8. The term "and" shall mean "and" or "or," whichever shall be more inclusive in the context in which it is used.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 10:**

The administrative file of the Internal Revenue Service prepared in connection with the Federal Income Tax audit of the Transactions for the taxable years 1999 and 2000, including without limitation the index thereto and the audit workpapers. Defendant may exclude the transaction documents previously produced by Plaintiff from this request.

**REQUEST NO. 11:**

The administrative file of the Internal Revenue Service prepared in connection with the Federal Income Tax audit of the Transactions for the taxable years 2001 and 2002, including without limitation the index thereto and the audit workpapers. Defendant may exclude the transaction documents previously produced by Plaintiff from this request.

**REQUEST NO. 12:**

All documents which Defendant anticipates relying on to show that the amounts reported by the Plaintiff for Federal Income Tax and financial accounting purposes relating to the Transactions were different than the amounts set forth in the attachments to the Revenue Agent's Report.

Dated February 22, 2008

Respectfully submitted by:

JOEL V. WILLIAMSON
Attorney of Record
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 701-7229

By: William A. Schmalzl
WILLIAM A. SCHMALZL
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 701-7225

# CERTIFICATE OF SERVICE

I, William A. Schmalzl, hereby certify that on this 22 day of February, 2008, I caused the foregoing Plaintiff's Second Request for Production of Documents to be served upon the United States of America by e-mail, to the following:

Cory A. Johnson
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
555 Fourth Street, N.W.
Washington, D.C. 2001
Cory A.Johnson@usdoj.gov
*Counsel for Defendant*

JOEL V. WILLIAMSON
Attorney of Record
Mayer, Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 701-7229

By: William A Schmalzl
WILLIAM A SCHMALZL
Mayer, Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 701-7225

EXHIBIT D

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-628 T
(Judge Thomas C. Wheeler)

WELLS FARGO & COMPANY and SUBSIDIARIES,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

UNITED STATES' RESPONSE TO
PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS

Defendant, the United States of America, hereby responds, pursuant to Rules 26 and 34 of the United States Court of Federal Claims ("RCFC"), to Plaintiff's Second Request For Production of Documents as follows.

**REQUEST NO. 10**: The Administrative file of the Internal Revenue Service prepared in connection with the Federal Income Tax audit of the Transactions for the taxable years 1999 and 2000, including without limitation the index thereto and the audit workpapers. Defendant may exclude the transaction documents previously produced by Plaintiff from this request.

**RESPONSE**: The United States objects to this request on the grounds that it is overly broad and seeks irrelevant information not reasonably tailored to lead to the discovery of admissible evidence. This is a *de novo* proceeding in which the court will determine the tax consequences of the transactions plaintiff engaged in by determining the facts and applying the

relevant Code sections, Treasury Regulations and case law, and any other relevant, published official guidance. Defendant was not a party to plaintiff's transactions, and plaintiff already has access to the relevant transactional documents and other evidence that constitute the foundation for the application of the law. The opinions, conclusions, communications or reasoning of individual IRS employees' are irrelevant, and not subject to discovery. Additionally, it is the United States' understanding that plaintiff already has copies of the final revenue agent reports for the transactions at issue.

The United States also objects to this request to the extent it seeks documents that are protected from disclosure by attorney-client or deliberative process/executive privilege.

**REQUEST NO. 11**: The Administrative file of the Internal Revenue Service prepared in connection with the Federal Income Tax audit of the Transactions for the taxable years 2001 and 2002, including without limitation the index thereto and the audit workpapers. Defendant may exclude the transaction documents previously produced by Plaintiff from this request.

**RESPONSE**: The United States objects to this request on the grounds that it is overly broad and seeks irrelevant information not reasonably tailored to lead to the discovery of admissible evidence. This is a *de novo* proceeding in which the court will determine the tax consequences of the transactions plaintiff engaged in by determining the facts and applying the relevant Code sections, Treasury Regulations and case law, and any other relevant, published official guidance. Defendant was not a party to plaintiff's transactions, and plaintiff already has access to the relevant transactional documents and other evidence that constitute the foundation for the application of the law. The opinions, conclusions, communications or reasoning of individual IRS employees' are irrelevant, and not subject to discovery. Additionally, it is the United States'

understanding that plaintiff already has copies of the final revenue agent reports for the transactions at issue.

The United States also objects to this request to the extent it seeks documents that are protected from disclosure by attorney-client or deliberative process/executive privilege.

**REQUEST NO. 12**: All documents which Defendant anticipates relying on to show that the amounts reported by the Plaintiff for Federal Income Tax and financial accounting purposes relating to the Transactions were different than the amounts set forth in the attachments to the Revenue Agent's Report.

**RESPONSE** The United States objects to this request on the grounds that it is vague, ambiguous and seeks irrelevant information not reasonably tailored to lead to the discovery of admissible evidence. The United States is currently seeking discovery from plaintiff concerning plaintiff's financial and tax treatment of the SILO transactions at issue. That discovery is ongoing and includes discovery seeking to establish the tax benefits claimed by plaintiff and the financial benefits and costs to plaintiff, and the assumptions related to those claimed benefits and costs. The United States is also seeking discovery from plaintiff's financial auditors and will produce to plaintiff all documents it receives from them. These investigations may inform the preparation of the government's factual defenses and assertions at trial. When discovery is complete, and in accordance with the pretrial exchanges the Court will direct, defendant will submit its Exhibit List to plaintiff.

The United States also objects to this request to the extent it seeks documents that are protected from disclosure by attorney-client or deliberative process/executive privilege.

Respectfully submitted,

*s/ Cory A. Johnson*

CORY A. JOHNSON
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
TEL: (202) 307-3046
FAX: (202) 514-9440
Cory.A.Johnson@usdoj.gov

RICHARD T. MORRISON
Acting Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief
JENNIFER P. WILSON
Trial Attorney
RICHARD BOWLES
Trial Attorney

*s/ Steven I. Frahm*
Of Counsel

March 31, 2008

CERTIFICATE OF SERVICE

I certify that service of the foregoing document has, this ___ day of _______, 2008, been made on counsel for the plaintiff by email and by mailing a copy thereof, in a postage prepaid envelope, to the following address:

William A. Schmalzl, Esq.
Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, Illinois 60606

______________________
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6440
Fax (202) 514-9440