IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-628 T
(Judge Thomas C. Wheeler)

WELLS FARGO & COMPANY and SUBSIDIARIES,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

**RESPONSE BY THE UNITED STATES TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

JOHN A. DICICCO
Deputy Assistant Attorney General

DAVID GUSTAFSON
STEVEN I. FRAHM
CORY A. JOHNSON
JENNIFER P. WILSON
RICHARD H. BOWLES
JOSEPH B. SYVERSON
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6495
(202) 514-9440 (facsimile)

# INDEX

Page

Introduction:

1. Background . . . . . . . . . . 2
2. Pertinent discovery to date . . . . . . . . . . 3
3. Plaintiff's second request for production of documents . . . . . . . . . . 5
4. The IRS administrative files . . . . . . . . . . 6
5. Plaintiff's motion to compel . . . . . . . . . . 6

Argument:

I. It is unreasonable to require the United States to state its conclusion on an issue it is currently investigating through discovery, and any difference with the IRS' analysis in the ultimate conclusion is irrelevant in this proceeding . . . . . . . . . . 7

II. Plaintiff's request for production of IRS administrative files exceeds the scope of permitted discovery . . . . . . . . . . 10

III. Privilege issues should be addressed only if plaintiff can make a threshold showing of relevance . . . . . . . . . . 13

Conclusion . . . . . . . . . . 15

**Page**

## CITATIONS

**Cases:**


*Cook v. United States*, 46 Fed. Cl. 110 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Detroit Screwmatic Co. v. United States*, 49 F.R.D. 77 (S.D.N.Y. 1970) . . . . . . . . . . . . 11

*Flamingo Fishing Corp. v. United States*, 31 Fed. Cl. 655 (1994) . . . . . . . . . . . . . . . . . 11

*Fowler v. United States*, 2002 WL 1310286 (Fed. Cl. 2002) . . . . . . . . . . . . . . . . . . . . . . 9

*Freeman v. Seligson*, 405 F.2d 1326 (D.C. Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324 (1974) . . . . . . . . . . . . . . . . . . 11

*R.E. Dietz Corp. v. United States*, 1990 WL 110936 (N.D.N.Y. 1990) . . . . . . . . . . . . . 10

*United States v. Nordberg*, 1996 WL 170119 (D. Mass. 1996) . . . . . . . . . . . . . . . . . 10, 12


**Statutes:**


26 U.S.C.:

§ 6111 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
§ 6112 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2


**Miscellaneous:**


RCFC 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12
Treas. Reg. § 1.6011-4 (26 C.F.R.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
I.R.S. Notice 2005-13, 2005-1 C.B. 630 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**No. 06-628 T**
**(Judge Thomas C. Wheeler)**

**WELLS FARGO & COMPANY and SUBSIDIARIES,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

**RESPONSE BY THE UNITED STATES TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Plaintiff seeks to compel the production of documents establishing defendant's conclusions regarding factual issues it is currently investigating in discovery to the extent it differs from the IRS' conclusions during audit. Plaintiff also is seeking the IRS's workpapers and similar documents its personnel prepared during the audit, so that plaintiff may compare defendant's conclusions with those of the IRS. (Exhibit C to plaintiff's motion to compel; Request Nos. 10-12.) Plaintiff's motion should be denied because it is unreasonable to require the United States to advise plaintiff of its conclusions with respect to issues it is still investigating through discovery, and, in this *de novo* proceeding, the IRS' analysis of plaintiff's SILO transactions is not relevant. Accordingly, the Court should deny plaintiff's motion to compel.

## INTRODUCTION

### 1. Background.

In this action, plaintiff is seeking a refund of approximately $51 million in federal income tax that it claims to have overpaid for the 2002 tax year. Plaintiff's claim is based on its participation in 27 SILO (sale-in/lease-out) transactions that purportedly provided plaintiff with approximately $169 million of deductions for interest, depreciation, and amortization of transaction costs in the 2002 tax year alone.[1]

The SILO tax shelter has been designated by the IRS as a "listed transaction" for purposes of the disclosure requirements set forth in Internal Revenue Code §§ 6111 and 6112 and Treasury Regulation § 1.6011-4(b)(2). *See* I.R.S. Notice 2005-13, 2005-1 C.B. 630. The purpose of the SILO tax shelter is to generate large tax benefits for the taxpayer. In form, a transaction is created in which the tax-indifferent entity (such as a foreign entity or a domestic municipal agency) purports to sell, and then lease back, certain assets. A great deal of paperwork is generated, but in substance, the tax-indifferent entity receives a fee from the taxpayer, and then continues to operate, maintain, and use the assets, and never transfers the benefits and burdens of ownership to the taxpayer. Additionally, the purported "sale" and "lease" payments and "borrowing costs" incurred merely form a circular flow of funds between the parties to the transaction and a cooperating bank. The taxpayer is out-of-pocket only the fee paid to the tax-indifferent entity and the transaction costs to purchase the tax shelter. Through the defeasance of rent payments, guarantees and other agreements, any risk of default or non-payment on the

[1]The SILO transactions purportedly provided plaintiff with the same type of deductions in additional tax years beginning in 1997. Although the audits of some tax years are ongoing, it appears that the total amount of deductions plaintiff claimed in connection with SILO transactions is well in excess of half a billion dollars.

obligations relating to the purported sale and lease of the property is eliminated. In short, nothing really changes in a SILO transaction. In substance, it is a paper sale of tax benefits, and not a true sale or lease of assets.

**2. Pertinent Discovery to Date.**

The United States has been conducting discovery in this case by requesting information from plaintiff, the tax-indifferent entities who were the counter-parties for the SILO transactions, and other third parties involved in the SILO transactions to develop facts relevant to the tax dispute at issue – whether plaintiff is entitled to the deductions it claimed in connection with the SILO transactions. In addition, the United States is conducting discovery in order to understand, and possibly challenge, the assertions made by plaintiff in its complaint. The information and documents that the United States is developing through discovery in this case were not previously requested or obtained by the IRS.

As relevant to the present dispute, the United States served a second request for production of documents and a second set of interrogatories on November 29, 2007. In those requests, the United States sought information from plaintiff regarding the past and future cash flows for each of the SILO transactions, in addition to the financial accounting, bank, financial regulatory, and federal tax reporting of the SILO transactions, and the assumptions and statements underlying such reporting. (Exhibits A and B to plaintiff's motion to compel.) The requested information is relevant to understand, and possibly challenge, certain assertions made by plaintiff with respect to its purposes in entering into the SILO transactions (*see, e.g.*, Complaint ¶¶ 52, 57, 66, 68, 69, 78), and the amounts reported by plaintiff as deductions on its 2002 tax return, among other issues. Quite obviously, the United States is seeking this

information about the cash flows, and tax, financial accounting, bank, and financial regulatory reporting of the transactions, and the assumptions underlying such reporting, from plaintiff – the party that entered into and reported the transactions. A large amount of the information sought by the United States is uniquely in plaintiff's possession (*e.g.* information about assumptions made by plaintiff in reporting the transactions for financial accounting purposes).

Plaintiff responded to the requests, on February 21, 2008, following a nearly three-month extension agreed to by the United States, by objecting to the requests as vague, overbroad, and unduly burdensome. Plaintiff also objected to the requests on the ground that the IRS had already examined these transactions, and the audit did not raise any issues with respect to the amount or timing of the cash flows associated with the transactions. Plaintiff did not move for a protective order. Instead, plaintiff responded to the requests with some of the information requested.

Counsel for the United States contacted plaintiff to discuss the inadequacy of some of plaintiff's responses. For example, in its initial response dated February 21, 2008, plaintiff did not provide information about the assumptions it made as part of determining the appropriate financial reporting treatment for the transactions, and whether it considered each item and amount to be "material" for financial reporting purposes. Counsel for the United States contacted plaintiff on March 31, 2008, to request a supplemental response addressing this information. Plaintiff's supplemental response dated April 7, 2008, failed to address this information. In a communication dated April 19, 2008, plaintiff's counsel indicated that it is taking longer than anticipated to collect the requested information, but the process is ongoing. Counsel for the United States will continue to discuss this and other inadequate responses with

plaintiff's counsel, but may need to file a motion to compel if plaintiff does not provide the requested information expeditiously.

With respect to third party discovery, counsel for the United States has indicated to plaintiff's counsel that a large number of documents have been received, and that we expect to obtain many more documents in response to outstanding subpoenas. The United States will produce the third-party documents to plaintiff as quickly as possible.

### 3. Plaintiff's Second Request for Production of Documents.

Plaintiff served a second request for production of documents on the United States on February 22, 2008, requesting two categories of documents: (1) the IRS administrative files prepared in connection with the audits of plaintiff's taxable years 1999, 2000, 2001, and 2002, excluding the transaction documents previously produced by plaintiff (Request Nos. 10 and 11); and (2) "All documents which Defendant anticipates relying on to show that the amounts reported by the Plaintiff for Federal Income Tax and financial accounting purposes relating to the Transactions were different than the amounts set forth in the attachments to the Revenue Agent's Report." (Request No. 12.) (Exhibit C to plaintiff's motion to compel.) The United States responded to plaintiff's requests on March 31, 2008, stating various objections and not producing any documents.[2] (Exhibit D to plaintiff's motion to compel.) Plaintiff filed a motion to compel

---

[2]Plaintiff suggests in its motion that the United States was not timely in responding to its second request for production of documents. (Motion to compel, at p. 4.) To the contrary, counsel for the United States advised plaintiff by telephone on March 5, 2008, less than two weeks after plaintiff served its discovery request, that it objected to the request. During the March 5 call, counsel for plaintiff advised that its concern was with establishing the amounts it reported for tax and financial accounting purposes. Counsel for the United States proposed a more direct and less cumbersome means for plaintiff to do so, as an alternative to its discovery request. Plaintiff agreed to consider the proposal and would advise whether it wished to proceed with its discovery requests. On March 27, 2008, plaintiff's counsel advised counsel for the
(continued...)

production on April 4, 2008.

**4. The IRS Administrative Files.**

The IRS conducted an audit of plaintiff's 2002 federal income tax return, and made adjustments related to the SILO transactions.[3] (Complaint ¶ 9; Answer ¶ 9.) As part of the audit, seven IRS Revenue Agents examined all of the 27 SILO transactions that gave rise to the deductions reported by plaintiff on its 2002 tax return. In connection with the examination of the SILO transactions, the Revenue Agents assembled files that primarily include transaction documents submitted by plaintiff, their own notes and work papers, Revenue Agent Reports ("RARs"), and other forms and case correspondence. It appears to the United States that plaintiff received a copy of the final RAR for each SILO transaction before filing this refund suit.

**5. Plaintiff's Motion to Compel.**

In its motion, plaintiff contends that it served its second request for document production in response to the second round of discovery served by the United States. (Motion at p. 3.) Plaintiff claims that it served this discovery because it "had not been aware of any disagreement concerning the amounts that had been reported for tax and accounting purposes," and "is concerned that Defendant either in the course of its audit or discovery in this case developed issues that were not disclosed in the Revenue Agent's Report that was provided to Plaintiff." (*Id.*) Plaintiff explains that it has requested the IRS administrative files, including the

---

[2](...continued)
United States that plaintiff had decided to pursue its discovery request, and planned to file a motion to compel. The United States then promptly served its response to plaintiff's discovery on March 31, 2008.

[3]The IRS also conducted, or is in the process of conducting, audits of plaintiff's 1999, 2000, 2001, 2003, 2004, 2005, and 2006 tax years. Those years are not in suit.

information considered by the IRS and the workpapers of the Revenue Agents, because "a review of such files should reveal the reasons for the disallowance, what information was relied on in reaching that conclusion, and the numerical tax impact of the disallowance and thereby would enable Plaintiff to seek out admissible evidence to rebut conclusions with which it disagrees." (*Id.*)

## ARGUMENT

Reduced to its essential nature, plaintiff's discovery and motion to compel seek defendant's conclusions (as discovery is proceeding) regarding documents it will rely on to challenge the amounts plaintiff has reported to the extent they differ from the IRS' conclusions. As explained below, it is unreasonable to demand defendant's conclusions regarding the accuracy of the amounts reported by plaintiff now, while the United States is in the midst of conducting discovery on this issue, among others. Moreover, the IRS' analysis (and the extent to which defendant may, ultimately, depart from it) is irrelevant in this *de novo* proceeding in which plaintiff has the burden of proving the deductions it has claimed.

### I.

### IT IS UNREASONABLE TO REQUIRE THE UNITED STATES TO STATE ITS CONCLUSION ON AN ISSUE IT IS CURRENTLY INVESTIGATING THROUGH DISCOVERY, AND ANY DIFFERENCE WITH THE IRS' ANALYSIS IN THE ULTIMATE CONCLUSION IS IRRELEVANT IN THIS PROCEEDING

Plaintiff has requested all documents "which Defendant anticipates relying on to show that the amounts reported by the Plaintiff for Federal Income Tax and financial accounting purposes relating to the Transactions were different than the amounts set forth in the attachments to the Revenue Agent's Reports." (Exhibit C to motion to compel, Request No. 12.) Plaintiff explains the purpose for this request as follows: "If Defendant has information that it intends to

use to challenge the heretofore unchallenged amounts reported for tax and accounting purposes, Plaintiff clearly needs to know what that information is." (Motion at p. 6.)

It thus appears that plaintiff is seeking both the conclusions of the United States with respect to the accuracy of the amounts reported by plaintiff, and information demonstrating whether the conclusions of the United States differ from the IRS' analysis. Plaintiff's request is improper, and its motion to compel should be denied, because it is unreasonable to require the United States to express a conclusion on an issue that it is currently investigating through discovery. In addition, when the United States completes discovery and reaches a conclusion on this issue, plaintiff will be advised of the conclusion through the normal pretrial exchanges, and any difference with the IRS' analysis will have no relevance in this *de novo* proceeding.

Plaintiff is aware that the United States is contending in this case that all of the deductions reported by plaintiff in connection with the SILO transactions must be disregarded pursuant to the economic substance, substance-over-form, and step transaction doctrines. (*See* Joint Preliminary Status Report, Docket Entry No. 14, p. 6, ¶(h).) And, plaintiff also is aware that the United States is seeking discovery from plaintiff and various third parties in order to develop the necessary facts on these issues. As noted above, plaintiff has not yet produced all of the information requested by the United States with respect to the cash flows and tax and financial accounting reporting of the Transactions, among other items of requested information.

Despite plaintiff's awareness that the United States is in the midst of conducting discovery, plaintiff is seeking to compel the United States to express a conclusion now with respect to the accuracy of the amount of the deductions reported by plaintiff in connection with the SILO transactions. Prior to completing discovery, the United States has not reached, and

therefore can't express, a conclusion on this issue. However, as indicated above, counsel for the United States has agreed that it will produce to plaintiff the third-party documents that is in the process of obtaining as quickly as possible. In addition, the United States will disclose the documents it intends to rely on in support of its defenses pursuant to RCFC 26(a)(1). Following the completion of discovery, the United States will disclose the evidence it intends to rely on at trial in the time and manner prescribed by Appendix A to this Court's rules. At this time, while the United States is continuing to investigate the factual issues through discovery, it is unreasonable to require the United States to advise plaintiff of its conclusion with respect to a particular factual issue.

To the extent the conclusion the United States will ultimately reach may differ from the analysis of the IRS, that difference will have no bearing on the determination of the issues in this case. Plaintiff, of course, has the burden of proving the amount and its entitlement to the deductions claimed, as well as any resulting refund of tax. *See Cook v. United States*, 46 Fed. Cl. 110, 113 (2000). In preparing its defense, the United States may rely on facts and theories not used by the IRS to challenge the deductions plaintiff claimed in connection with the SILO transactions, and it is not bound by the analysis and legal theories set forth in the RARs. *See, e.g.*, *Cook*, 46 Fed. Cl. at 114-115 ("[C]ourts have repeatedly held that the government may support a tax assessment based on any admissible evidence, including that first disclosed in discovery, and, conversely, need not rely solely, or at all, on the evidence reviewed administratively by the Service"); *Fowler v. United States*, 2002 WL 1310286, *1 (Fed. Cl. 2002). The United States' case at trial will rest on evidence developed by counsel for the United States through discovery in this action, not whatever the IRS may have understood about the

SILO transactions when the Revenue Agents prepared the RARs several years ago.

## II.

## PLAINTIFF'S REQUEST FOR PRODUCTION OF IRS ADMINISTRATIVE FILES EXCEEDS THE SCOPE OF PERMITTED DISCOVERY

Plaintiff is also seeking to compel production of the IRS administrative files prepared in the course of the IRS audits of plaintiff's tax years 1999, 2000, 2001, and 2002, excluding the transaction documents previously produced by plaintiff. (Exhibit C to plaintiff's motion, Request Nos. 10 and 11.) Plaintiff already has copies of the RARs prepared by the Revenue Agents for each of the 27 SILO transactions. What plaintiff is intent on obtaining through this motion to compel are the Revenue Agents' notes and workpapers, reflecting their analysis and thoughts in the course of the audit and in the preparation of the RARs. Plaintiff has explained that it seeks to determine the extent to which defendant's conclusions differ from those reached by the IRS.

The IRS' views are not relevant either independently, or in relation to the conclusions defendant will reach. (*See* Exhibit D to plaintiff's motion at pp. 1-2.) This tax refund suit is a *de novo* proceeding in which the Court will determine the tax consequences of the transactions in which plaintiff engaged by determining the facts relevant to the transactions, and applying the relevant Code sections, Treasury Regulations, case law, and any other relevant, published official guidance. *Cook*, 46 Fed. Cl. at 113 ("In tax refund suits, factual issues are tried *de novo* in this court, with no weight given to subsidiary factual findings made by the Service in its internal administrative proceedings"); *United States v. Nordberg*, 1996 WL 170119, *2 (D. Mass. 1996) ("[A] challenge to a tax determination results in a trial *de novo* rather a review by this Court of an existing administrative record . . . ."); *R.E. Dietz Corp. v. United States*, 1990 WL 110936, *7

(N.D.N.Y. 1990) (court's role in taxpayer refund action is not to "sit in review of the determination by the IRS; rather, . . . the court, as trier of fact here, listens to and evaluates evidence so as to ultimately determine whether the taxpayer has proved by a preponderance of the evidence that the assessment is wrong"); *cf. Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 328 (1974) (deficiency proceeding is *de novo*, and determination as to tax liability "must be based on the merits of the case and not any previous records developed at the administrative level").

Thus, the tax consequences here will be determined based on the actions of the parties to the SILO transactions, and the nature and effects (if any) of the transactional documents; not the IRS' analysis. The United States was not a party to plaintiff's SILO transactions, and plaintiff already has access to the relevant transactional documents and other evidence that constitute the foundation for the application of the law.[4] The issue in this case is plaintiff's entitlement to the deductions it reported on its 2002 tax return in connection with the SILO transactions. The IRS's analysis of plaintiff's tax reporting has no relevance to the determination of this issue. *See Flamingo Fishing Corp. v. United States*, 31 Fed. Cl. 655, 658 (1994) (concluding that Revenue Agents' opinions and conclusions were irrelevant and not discoverable); *Detroit Screwmatic Co. v. United States*, 49 F.R.D. 77, (S.D.N.Y. 1970) (denying plaintiff's discovery request for IRS reports and memoranda analyzing books and records in the possession of or available to plaintiff because the "subjective analysis of the [IRS] agent and technical advisor . . . and their respective opinions as to the proper method to be applied in determining whether taxes are due form no part

---

[4]To the extent that evidence relevant to the transactions is being collected by the United States from third parties and is not already in plaintiff's possession, the United States will provide copies of such evidence to plaintiff.

of the plaintiff's case . . . and are not essential nor required for proper preparation).

Plaintiff's stated purpose in requesting the IRS administrative files is that "a review of such files should reveal the reasons for the disallowance, what information was relied on in reaching that conclusion, and the numerical tax impact of the disallowance and thereby would enable Plaintiff to seek out admissible evidence to rebut conclusions with which it disagrees." (Motion at p. 3.) But the reasons for IRS action are not relevant to the litigation, and the information that is pertinent to the deductions at issue is already available to plaintiff, as a participant in the SILO transactions. Like the taxpayer in *United States v. Nordberg*, plaintiff is seeking to obtain "information about the reasoning and processes by which IRS employees involved with the audit of the taxpayers' return decided to assess the tax liabilities with respect to their . . . transactions." 1996 WL 170119, *2 (D. Mass. 1996). The court in the *Nordberg* case denied the taxpayers' motion to compel, finding:

> The information sought by [taxpayers] which forms the basis for the motion to compel is, therefore, evidence which would not be relevant to determining their 1987 tax liability. Information about people who participated in the audit is not relevant, nor are notes made by IRS employees during the audit. Indeed, the audit of the [taxpayers'] 1987 tax return took place well after the tax year at issue. In short, the information requested by [taxpayers] has no bearing on the sole issue in the case at bar because the [taxpayers'] ultimate tax liability is not influenced by the IRS' conduct or findings during the audit.

*Id.* The Court should reach the same conclusion here, and deny plaintiff's motion to compel production of IRS administrative files that have no bearing on the issues in this case.[5] Plaintiff's discovery exceeds the scope of RCFC 26(b). The production of the documents, and the

---

[5]This argument applies equally to plaintiff's request for all four years of IRS administrative files requested by plaintiff. We note, however, that plaintiff's request for the IRS administrative files for the audits of plaintiff's 1999, 2000, and 2001 tax years is irrelevant for the additional reason that those years are not at issue in this case.

inevitable subsequent controversies that would ensue regarding their use, would be a wasteful and burdensome diversion.

## III.

## PRIVILEGE ISSUES SHOULD BE ADDRESSED ONLY IF PLAINTIFF CAN MAKE A THRESHOLD SHOWING OF RELEVANCE

As explained in the preceding sections, plaintiff's document production requests exceed the scope of permissible discovery in this case. Therefore, the Court should address privilege issues concerning these documents only if it first determines that plaintiff has met its initial burden of demonstrating that these documents are relevant – or reasonably calculated to lead to the discovery of admissible evidence – and established good cause for their production. The court in *Freeman v. Seligson*, 405 F.2d 1326 (D.C. Cir. 1968), described this practical two-step procedure and its rationale as follows:

> We agree, however, with the Secretary that matters of privilege can appropriately be deferred for definitive ruling until after the production demand has been adequately bolstered by a general showing of relevance and good cause, and at least the rough dimensions of the Secretary's burden have been set. This technique may, as to particular items, eliminate the 'showdown' on privilege. Perhaps also the frequently, and in this case almost certain, laborious page-by-page examination which assertions of privilege will require, certainly of the Secretary and perhaps also of the court, may be avoided or curtailed.
> We are, however, on notice that privileges of certain types will be asserted, and it is evident that the rulings to be made could drastically affect the size and nature of any productions to be made. We think that, in the circumstances of this case, we should lay down general guidelines in this regard, leaving determinations as to specific documents for such time as the issue develops precisely.

*Freeman*, 405 F.2d at 1338-1339. In light of plaintiff's broad and, the United States believes, irrelevant document requests, this approach is equally sensible and efficient here.

In responding to plaintiff's second request for production of documents, the United States

indicated that many of the documents requested are likely subject to the attorney-client or deliberative process/executive privilege. (*See* Exhibit D to motion to compel, pp. 2-4.) The United States has not, therefore, waived any privilege claims. The United States will provide a privilege log to plaintiff, with privilege claims asserted by the appropriate official, should the Court decide that the United States' other objections are unfounded.

**CONCLUSION**

For the foregoing reasons, the Court should deny plaintiff's motion to compel.

Respectfully submitted,

*s/ Cory A. Johnson*
CORY A. JOHNSON
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
TEL: (202) 307-3046
FAX: (202) 514-9440
Cory.A.Johnson@usdoj.gov

JOHN A. DICICCO
Deputy Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief
JENNIFER P. WILSON
Trial Attorney
JOSEPH B. SYVERSON
Trial Attorney
RICHARD H. BOWLES
Trial Attorney

*s/ Steven I. Frahm*
Of Counsel

Attorneys for the United States

April 21, 2008