**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **WELLS FARGO & COMPANY and SUBSIDIARIES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 06-628 T** |
| **v.** | ) | |
| | ) | **(Judge Thomas C. Wheeler)** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

# THE UNITED STATES' STATUS REPORT AND MOTION TO ENLARGE THE CURRENT SCHEDULE


JOHN A. DICICCO
Deputy Assistant Attorney General

DAVID GUSTAFSON
Chief, Court of Federal Claims Section

STEVEN I. FRAHM
Assistant Chief, Court of Federal Claims Section

CORY A. JOHNSON
JENNIFER P. WILSON
JOSEPH B. SYVERSON
RICHARD H. BOWLES
Trial Attorneys, Court of Federal Claims Section
U.S. Department of Justice
Tax Division, Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington D.C. 20044
(202) 307-3046 (Phone)
(202) 514-9440 (Fax)


3329653.1

# TABLE OF CONTENTS

Page(s):

I. DISCOVERY CONDUCTED TO DATE . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. THE SCHEDULE SHOULD BE EXTENDED, BECAUSE PLAINTIFF'S DISCOVERY RESPONSES HAVE BEEN UNTIMELY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III. SUBSTANTIAL DISCOVERY REMAINS TO BE COMPLETED . . . . . 10

A. Defendant Must Review The 40,000 Pages of Documents Plaintiff has Just Produced . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

B. Numerous Depositions are Necessary . . . . . . . . . . . . . . . . . . . . . . . 11

C. The Parties Need Additional Time to Conduct Foreign Discovery . 13

IV. THE CURRENT SCHEDULE SHOULD BE EXTENDED BY THREE MONTHS AND THE COURT SHOULD SCHEDULE A POST-DISCOVERY CONFERENCE TO ADDRESS WHETHER, AT THAT POINT, THE BEST MEANS FOR RESOLVING THE CASE IS BY SUMMARY JUDGMENT OR TRIAL . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**No. 06-628 T**
**(Judge Thomas C. Wheeler)**

**WELLS FARGO & COMPANY and SUBSIDIARIES,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

**THE UNITED STATES'**
**STATUS REPORT AND MOTION**
**TO ENLARGE THE CURRENT SCHEDULE**

---

The United States has requested that the Court hold a status conference as soon as possible in order to request that the current schedule be extended by three months. The schedule should be adjusted, because plaintiff has not produced requested documents and information in a timely manner, as it committed to do during the last scheduling conference in this case, and because, even with defendant's intensive efforts, a significant amount of discovery remains to be completed. The United States' discovery requests for basic information have been pending for many months, but plaintiff has not provided timely, complete responses and it has been slow in providing required disclosures and responding to other discovery requests by the United States. Most importantly, plaintiff *has just provided, on May 13, over 35,000 pages of new documents and information*, in response to requests served months ago, in June and November *of last year*. For these and several other reasons explained below, the United States respectfully requests that

the Court extend the current schedule, so the parties will have adequate time to plan and complete the remaining, necessary discovery.

The delays in plaintiff's production of documents and information, and the significant amount of discovery that remains to be completed, will prejudice defendant's defense of this case unless an enlargement of the schedule is allowed. The short enlargement defendant is requesting will not prejudice plaintiff.[1]

## I. DISCOVERY CONDUCTED TO DATE

This case concerns the tax consequences of 27 "sale-in, lease-out" transactions entered into by plaintiff during the years 1997 through 2002. Each "SILO" transaction involves multiple constituent transactions and agreements, and many different parties (on average, about six to eight), including the tax-indifferent public transit agencies and foreign corporations that served as counter-parties in the transactions, banks (both foreign and domestic), trust companies, appraisers and other financial institutions. Over the past months, the United States has been engaged in obtaining discovery from plaintiff and other participants in the transactions. The United States has issued over thirty subpoenas for documents and has received from these third parties and plaintiff approximately 32,000 documents, containing over 500,000 pages. Without

[1] Plaintiff is unrealistically insisting that discovery be completed as if this case concerned only one or two complex transactions, rather than twenty-seven, and notwithstanding that its responses to discovery have not been provided without significant delay. Plaintiff's inconsistent position was recently illustrated by its objections to the United States' first set of requests to admit to plaintiff: as part of its objection, plaintiff stated that the 27 "Transactions were individually negotiated, and they are distinct in their facts and terminology..." The United States recognizes that the large number of transactions involved, and the time that has elapsed since they were undertaken, means that it may reasonably take plaintiff some time to produce the requested documents and information. Indeed, the United States has also required extra time to produce some of the documents plaintiff has requested. The discovery period should reflect these circumstances, and not be circumscribed artificially, as plaintiff is arguing.

question, this case requires a substantial amount of discovery, and the United States has been diligently pursuing that discovery.

From the outset, in their March 12, 2007, Joint Preliminary Status Report, the parties advised the Court (at p. 7) that, in light of the number of transactions, and number of parties involved, "substantial discovery" would be required in this case. The parties also stated in that report that, because of the large number of transactions at issue, they intended to explore the possibility of selecting a subset of representative transactions to present to the court for decision. The parties considered an agreement regarding representative transactions to be a desirable goal, as it would result in a far more streamlined trial and substantial judicial efficiencies.

The parties then made their initial disclosures pursuant to RCFC 26(a)(1) on April 16, 2007, and the United States issued its first set of written discovery requests to plaintiff in June 2007. The discovery that the United States has been pursuing since then from plaintiff and third parties has, in part, been directed at determining whether or not the parties could, in fact, present representative transactions to the Court. Plaintiff has also issued discovery to the United States, and has been pursuing informal discovery from its counter-parties in the transactions.

Soon after discovery started, the United States requested that plaintiff inform it, as soon as plaintiff was able, whether plaintiff had determined that representative transactions could be presented, and identify those that plaintiff would propose. Because it was a party to the underlying transactions, and the United States was not, plaintiff was in a much better position to make such a determination, and such a proposal, before the United States could. Nevertheless, plaintiff did not propose representative transactions until March 26, 2008 – almost one year after the parties filed the joint preliminary status report. Plaintiff first made its proposal to the United

States on the eve of the last status hearing, on March 27, 2008.

Since then, the United States has continued to obtain and review documents from plaintiff and the third-parties involved in the transactions, and made a counter-proposal to plaintiff regarding representative transactions. In light of plaintiff's "head-start" on the issue, the United States' counter-proposal to plaintiff was more than timely. Although the parties have not yet fully agreed to the details of a stipulation regarding representative transactions, or discussed it with the Court, it appears they will propose presenting five transactions to the Court for decision. However, significant discovery – including foreign discovery – still remains to be completed, as well as numerous depositions regarding the representative transactions. Progress on this discovery has been delayed by the time it has taken plaintiff to respond to defendant's earlier discovery requests that are a predicate for the remaining discovery.

## II. THE SCHEDULE SHOULD BE EXTENDED, BECAUSE PLAINTIFF'S DISCOVERY RESPONSES HAVE BEEN UNTIMELY

During the last status conference with the Court on March 27, 2008, the Court advised the parties that "in granting essentially the schedule that Plaintiff has requested it's going to be incumbent upon the Plaintiff to cooperate in every respect with Defendant so that the discovery gets completed." (Tr. at 21:2-6.) Plaintiff's counsel responded, "[W]e'll commit to that." (Tr. at 21:22-23.) Consistent with that discussion, the Court's order following the status conference stated that it would consider adjustments to the schedule. (See Order, dated March 28, 2008).

Notwithstanding plaintiff's conciliatory words to the Court, it has not provided the timely responses to discovery on which the current schedule was premised, and the United States has been delayed in progressing with discovery as a result. To illustrate our point, we'll discuss only a few examples.

The United States served its first set of interrogatories and requests for documents on June 28, 2007, nearly a year ago. Although plaintiff served an initial response in July 2007, and produced thousands of pages of documents, plaintiff recognized that its response was incomplete, as it stated that it was still searching for documents. Ten months later – that is, just over two weeks ago – plaintiff produced additional responsive information to our July 2007 requests. Plaintiff's May 13, 2008 supplemental response referred the United States to a new production of thousands of pages of documents (See Exhibit A, lists of documents attached to plaintiff's interrogatory answers).

The United States served a second set of interrogatories and requests for document production on November 29, 2007. Plaintiff did not respond at all to these interrogatories until February 21, 2008. Even after taking two additional months to respond, plaintiff provided inadequate responses to many of the requests. After receiving plaintiff's initial responses, the United States repeatedly contacted plaintiff to discuss the deficiencies. In its recent, belated production on May 13, plaintiff referred the United States to another set of *tens of thousands* of pages of documents, in response to this second set of interrogatories served months ago, in November 2007. (See Exhibit B, additional lists of documents provided by plaintiff on May 13, 2008.) The United States is now in the midst of reviewing this new production of 35,000+ documents to determine whether it is sufficient, or whether it must file a motion to compel.

The United States' second set of interrogatories requested, among other things, the following very basic information pertaining to plaintiff's allegations in this case, and undoubtedly already within plaintiff's knowledge (uniquely so, in some cases):

> **Interrogatory No. 4.** For each Transaction, identify and describe in detail the actual amount and date of all purported equity investments, loans, rent

payments, debt service payments, deposits, purchases or provisions of collateral or security, pledges, fees and transactional costs, and any other transfers or receipts of money, funds, securities or other assets that have been made or received to date by plaintiff and other parties to the Transactions, and identify the documents that reflect those payments, deposits, pledges, transfers or receipts. Please state in your answer the actual transferor, recipient and custodian, and whether transfers or payments were actually made or constructively made through accounting entries.

**Interrogatory No. 7.** For each Transaction, identify the original governing agreements and documents, any amendments or modifications to those agreements and documents, and the agreements and documents that you believe currently govern each Transaction, including the payment of, transfer of, receipt of or right to any funds, securities or assets in the future.

**Interrogatory No. 10.** Describe in detail, by transaction and year, how each of the Transactions has been reported by plaintiff to date for financial reporting purposes, including the items and amounts of income, revenue, expense, loss, asset, reserve or liability reported, and identify all documents reflecting such reporting. Include in your answer the assumptions plaintiff made as part of determining the appropriate financial reporting treatment and whether plaintiff considered each item and amount to be "material" for financial reporting purposes.

**Interrogatory No. 11.** Describe in detail, by transaction and year, how each of the Transactions has been reported to date for bank or financial regulatory purposes by plaintiff and any affiliate of plaintiff, including the items and amounts of income, revenue, expense, loss, asset, liability or reserves reported, and identify all documents reflecting such reporting. Include in your answer the classification of risk for each reported asset and the classification (or capital tier) for each reported liability.

Plaintiff initially responded to these interrogatories on February 21, 2008. After reviewing plaintiff's responses, counsel for the United States recognized that several were inadequate. Accordingly, counsel for the United States contacted plaintiff on March 31, April 3, and April 14, 2008, to advise plaintiff of the inadequacies and to request supplemental responses with respect to interrogatories numbered 4, 7, 10, and 11.

With respect to interrogatory number 4, counsel for the United States advised plaintiff that its initial response was incomplete, because it did not include retrospective information about payments actually made to date, the method of payment, or the itemization of transaction costs paid for each transaction. With respect to interrogatory number 7, counsel for the United States reminded plaintiff that it stated in its initial response that it would provide an "additional response regarding the Belgacom and SFR Daphne 5 transactions, in which an option has been exercised, and equipment has been exchanged, respectively," and inquired when such additional response would be forthcoming. With respect to interrogatory number 10, counsel for the United States advised plaintiff that its initial response was insufficient, because it did not identify the actual assumptions made under FASB 13 (while acknowledging that certain assumptions have to be made), and did not describe the particular financial treatment for each transaction. Finally, with respect to interrogatory number 11, counsel for the United States advised plaintiff that its initial response was incomplete, because it referred only to one bank and financial regulatory report, both only for the period ending March 31, 2007, despite the fact that the request was for all such reporting of the transactions from inception to date.

Because plaintiff did not immediately provide supplemental interrogatory responses, counsel for the United States again contacted plaintiff's counsel on April 21 and May 5, 2008, requesting information about the status of plaintiff's supplemental responses. On May 6, 2008, plaintiff's counsel advised counsel for the United States that plaintiff would provide documents and/or supplemental interrogatory responses by May 9, 2008. Plaintiff provided the supplemental responses on May 13, 2008.

It appears that plaintiff has now – more than six months after the information was initially requested – provided additional documents in response to interrogatory number 7. However, it appears that plaintiff still has not yet provided complete responses to interrogatories numbered 4, 10, and 11. The information requested by the United States in these interrogatories (and accompanying requests for document production) is basic transactional information, and relevant for the United States to be able to investigate and respond to plaintiff's allegations. For example, plaintiff alleges in its Complaint that it entered into the transactions in order to obtain a particular accounting treatment under FASB 13 and to obtain a particular economic return (which is obviously dependent on the transactions costs and cash flow, or lack thereof, from the transactions).

Plaintiff has not objected to the relevance of the United States' requests; rather, plaintiff has responded slowly and/or failed to provide complete and adequate responses. For example, plaintiff just produced on May 22, 1,300 pages of transactional, pricing, and cash flow information purportedly used by plaintiff for its accounting and tax reporting of the transactions. *Clearly, this information was in plaintiff's hands when it filed this case, and should have been produced six months ago, when requested.*

In addition to plaintiff's untimely responses to written discovery, plaintiff has not provided information about certain witnesses, despite repeated requests for the required information from the United States. On March 26, 2008, plaintiff supplemented its initial disclosures to identify certain witnesses that it may rely upon in connection with the transactions, involving the foreign counter-party Belgacom Mobile, S.A. ("Belgacom witnesses"). The Belgacom transaction is one of the representative transactions plaintiff is proposing.

Contrary to RCFC 26, however, Plaintiff provided only the names of the Belgacom witnesses, and not any contact information. On April 24, 2008, counsel for the United States contacted plaintiff's counsel to request additional information about the Belgacom witnesses, including whether the witnesses (who are believed to reside in Belgium) will appear for a deposition voluntarily.[2] Plaintiff's counsel agreed to provide the requested information by May 2, 2008, but failed to do so. Plaintiff's counsel again agreed to provide the information during a telephone call on May 6, 2008, and again failed to do so. Counsel for the United States contacted plaintiff's counsel on May 6, 2008, requesting contact information for the witnesses, or if the witnesses are represented by counsel, contact information for counsel. On May 14, 2008, counsel for the United States contacted plaintiff's counsel inquiring whether the Belgacom witnesses would be willing to travel to London for depositions, which may reduce logistical difficulties considerably. To date, plaintiff has not provided any of the requested information about its Belgacom witnesses.

At the same time plaintiff has been providing delayed and inadequate responses to the United States' discovery requests and requests for information about witnesses designated by plaintiff, plaintiff has been insisting that discovery be completed as quickly as possible and has assured the Court that it will cooperate with the United States. It is unreasonable of plaintiff to argue that the United States must complete discovery on the transactions at issue in this case in the next two months, when plaintiff has not provided timely, complete documentation for its own

---

[2]As discussed in Section C below, it is significantly more complicated and time consuming to obtain foreign discovery. However, if a foreign witness will appear voluntarily for a deposition, rather than by legal compulsion, the process may be completed in less time and with less complication.

transactions, and appears unable or unwilling to timely respond to requests for basic transactional and reporting information *that have been pending for six months to a year.* Whatever the reasons for plaintiff's delay in responding to basic, indisputably relevant information, defendant is entitled to a reasonable period after obtaining plaintiff's responses to complete significant other, dependent discovery. Two months is not such a period. The United States is willing to continue to work with plaintiff to obtain the information, as it has been doing – and work towards a possible agreement or stipulation on some of these facts, when provided with plaintiff's answers – but plaintiff's slow responses have significantly delayed its progress.

## III. SUBSTANTIAL DISCOVERY REMAINS TO BE COMPLETED

### A. Defendant Must Review the 35,000 Pages of Documents Plaintiff has Just Produced

Obviously, one part of the significant discovery that remains to be done is the United States' review of the more than 35,000+ pages of documents that plaintiff just produced to the United States, in response to requests served in June and November 2007. Defendant is working on that task, which will take some time, and the United States must finish that task *before* deposing plaintiff's employees and witnesses, and the third-parties to whom the documents possibly relate. The United States also expects plaintiff to produce additional documents in the next few weeks.[3]

[3] As another example of plaintiff's ongoing, untimely production, plaintiff just produced in the last few days complete copies of certain documents concerning its internal review and approval of two of the SILO transactions (Washington Metro and Houston Metro) that it has proposed as representatives, despite the fact that these documents were requested in the United States' first set of discovery requests served in June 2007. (Plaintiff had previously only produced incomplete copies.) The United States has still not received complete copies of similar documentation for the Belgacom transaction.

The United States has recently provided to plaintiff the documents it has obtained, to date, from third parties pursuant to subpoenas. Neither plaintiff, nor the third parties objected to the relevance of this discovery, but production of the documents from the third parties has taken several months, and the United States is still reviewing these documents. These documents consist of hundreds of thousands of pages, and were produced to the United States primarily in paper form. At defendant's considerable expense, it scanned these document to expedite their review, to facilitate their production to plaintiff, and for the parties' and the Court's eventual convenience in resolving this case. This involved separating the thousands of pages of production into documents and converting them to searchable TIFF images. The United States then produced four DVDs to plaintiff with a "load file" so that they are easily accessible.

**B. Numerous Depositions are Necessary**

Based on the United States' initial review of the documents and discovery responses in this case, it has determined that there are more than 100 individuals who may have information relevant to the 27 transactions at issue. Rather than depose all of these individuals early in discovery, however, the United States served written discovery requests on plaintiff and issued subpoenas to more than thirty third parties in order to obtain documentary information about the transactions, and try to determine if representative transactions could be presented, and if so, which ones. Defendant's goal was to thereby limit the needed depositions to those pertinent to the representative transactions. Additionally, depositions could only proceed after defendant had obtained the documents needed to inform its questions and make those depositions meaningful. *Plaintiff's recent production of over 35,000+ pages of new documents – in response to the United States' first and second set of discovery requests served in July and November 2007 –*

*demonstrates that the United States had not received all the requested, relevant documents from plaintiff, and could not have conducted depositions earlier with a proper documentary foundation.* Now, the United States must review this latest additional production before conducting depositions.

Because the document and written discovery needed as a predicate for depositions has taken a significant amount of time, and because both parties just recently were able to propose representative transactions, numerous depositions remain to be taken in this case, even though the parties will now focus the depositions primarily on representative transactions.

In its initial disclosures in April 2007, plaintiff identified only four witnesses that it may call at trial, all employees of plaintiff. When plaintiff informed the Untied States just two months ago of the transactions it would like to present to the Court as representative transactions, it supplemented its RCFC 26 disclosures by identifying seventeen additional witnesses that it may call at trial, including witnesses residing in Belgium.

As a product of the discovery it has conducted, the United States also has identified approximately forty additional persons who are likely to have discoverable information with respect to just the five representative transactions it anticipates that the parties will present to the court for decision. The United States provided a supplemental disclosure to plaintiff listing these persons as additional witnesses. These witnesses – like plaintiff's recently disclosed witnesses – are current or former employees of plaintiff and the other participants in the transactions, including banks, appraisers, promoters, and arrangers. (See Exhibit C, a list of potential witnesses to be deposed) The United States may not need to depose all these individuals, but because many different entities and individuals were involved in just the five transactions, it may

be necessary.[4] Moreover, these witnesses are located throughout the country – from California to Chicago to New York to Florida – and in Europe. The depositions will require substantial travel and time to complete.

Plaintiff has agreed to enlarge the number of permissible depositions in this case to thirty fact witnesses, from the presumptive limit of ten in RCFC 30(a)(2)(A), but has stated that it will not agree to more. The United States is considering whether to file a motion to enlarge the number of depositions beyond the amount to which plaintiff will agree.

### C. The Parties Need Additional Time to Conduct Foreign Discovery

As explained above, plaintiff identified its proposed representative transactions on March 26, 2008. Plaintiff identified one transaction involving a foreign lessee, Belgacom, and identified three witnesses from Belgacom that it intended to call at trial. The United States has a bilateral income tax treaty with Belgium, which provides for requests for exchange of information for purposes of enforcing the income tax laws of the requesting party. *See* Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Belgium, Art. 25, November 27, 2006, S. Treaty Doc. No. 110-3. Accordingly, the United States prepared treaty requests for documents and testimony in connection with these transactions. A request for exchange of information under the U.S-Belgium Income Tax Treaty has been delivered to the Belgian competent authority. In this request, the United States has asked the Belgian authorities to obtain documents from Belgacom. The United States has not yet

---

[4] These entities include, but are not limited to, plaintiff, AIG-FP Funding (Cayman) Limited, AIG-FP Special Finance (Cayman) Limited, AIG Financial Products., Ernst & Young, Mercer, Trinity Advisors, Allco Finance, Capstar Partners, American Appraisal Associates, Marshall & Stevens, FSA Global Funding, R.L. Banks, Deloitte & Touche, Macquuarie Corporate Finance, Bank of America, Fleet Capital Leasing, Tyler & Co., as well as employees of the tax-indifferent counter-parties to the SILO transactions.

formally made a request for testimony of the Belgacom witnesses identified by plaintiff, because it is waiting for plaintiff to inquire whether the witnesses it has identified as its own trial witnesses will appear for depositions voluntarily. We have been advised that the Belgian authorities will not permit us to directly contact the Belgian witnesses informally to determine if they would appear voluntarily for depositions. Although plaintiff's counsel has agreed to investigate this basic, procedural question, they have not provided any information to date.

In a further effort to streamline discovery involving the foreign lessees, the United States served a fourth request for production of documents on plaintiff on April 25, 2008 – after learning that plaintiff, in fact, wanted to present one of the foreign transactions as part of the representative set. Defendant requested, "to the extent such documents are in the possession, custody, or control of any of the Foreign Lessees, and are in the control of Plaintiff by virtue of any Tax Indemnity Agreement with any of the Foreign Lessees," the same documents that are the subject of the foreign treaty requests. Based on certain provisions in the tax indemnity agreements, and other agreements, between plaintiff and the foreign lessees, plaintiff should be able to obtain the documents more quickly and efficiently than the United States via formal treaty requests.

Notwithstanding defendant's effort to expedite discovery, and despite plaintiff's commitment to the Court to cooperate, plaintiff's counsel advised counsel for the United States for the first time on May 22, 2008 (almost one month after the request was made to plaintiff) that plaintiff objected to this request in its entirety. Contrary to RCFC 34, plaintiff did not respond and object individually to the requests, but instead submitted a global objection. Moreover, plaintiff's counsel stated that he had not even contacted its foreign counter-parties to inquire

which documents he could obtain in response to the request. That is, despite acknowledging that it could have requested at least some of the documents pursuant to the tax indemnity agreements, plaintiff did not even make an attempt. After waiting 30 days to serve a global objection, Plaintiff has now offered to make a more limited request to Belgacom for documents. But this process has now been delayed by thirty days due to plaintiff's lack of cooperation.

## IV. THE CURRENT SCHEDULE SHOULD BE EXTENDED BY THREE MONTHS AND THE COURT SHOULD SCHEDULE A POST-DISCOVERY CONFERENCE TO ADDRESS WHETHER, AT THAT POINT, THE BEST MEANS FOR RESOLVING THE CASE IS BY SUMMARY JUDGMENT OR TRIAL

To allow for the significant, necessary discovery to be completed in this case, and which has been delayed by plaintiff's untimely discovery responses (*e.g.* plaintiff's recent production of 35,000+ documents), the current fact discovery deadline and expert disclosure dates should be extended by three months. As in the current schedule, expert discovery should follow completion of fact discovery, and not overlap with it. This, of course, would require moving the trial date as well, but doing so will not prejudice plaintiff.

The United States believes it would be appropriate to schedule a post-discovery conference pursuant to RCFC, Appendix A, § 11 to address the best means to resolve this case at that time. Four courts have now addressed transactions very similar to those in this case, and the similar tax benefits plaintiff is claiming. In *BB&T Corp. v. United States*, 2007 WL 37798 (M. D. N.C. 2007), the United States District Court for the Middle District of North Carolina granted summary judgment for the United States in a case involving a lease-in, lease-out transaction ("LILO"), disallowing the tax benefits claimed. The United States Court of Appeals for the Fourth Circuit just recently affirmed that summary judgment decision. *BB&T v. United States*,

523 F.3d 461 (4th Cir. 2008). In *Fifth Third Bancorp v. United States*, No.05-350, Docket entry 172, (S.D. OH., April 18, 2008), a jury recently returned a verdict for the United States in another similar LILO case, again disallowing the claimed tax benefits. Finally, just last week the United States District Court for the Northern District of Ohio issued its decision disallowing the claimed tax benefits in a SILO transaction similar to those in this case. *See AWG Leasing Trust, KSP Investments, Inc., as Tax Matters Partner v. United States*, No. 07-857, Docket entry 179, (N.D. OH., May 28, 2008) (AWG was a partnership between two banks.) After completion of the outstanding discovery in this case, the parties will be in a better position to know whether trial or summary judgment is the best means to resolve this case.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court adjust the current schedule by three months, and set a new schedule providing for the completion of fact discovery by October 31, 2008; initial expert disclosures on December 15, 2008; rebuttal expert disclosures on February 1, 2009; and completion of expert discovery by March 1, 2009. The United States also requests that the Court set a post-discovery conference in early March, 2009, and a new date for trial.

Respectfully submitted,

*s/ Cory A. Johnson*
CORY A. JOHNSON
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
TEL: (202) 307-3046
FAX: (202) 514-9440
Cory.A.Johnson@usdoj.gov

JOHN A. DICICCO
Acting Assistant Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief
JENNIFER P. WILSON
Trial Attorney
JOSEPH B. SYVERSON
Trial Attorney
RICHARD H. BOWLES
Trial Attorney

*s/ Steven I. Frahm*
Of Counsel

June 3, 2008