IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WELLS FARGO & COMPANY and SUBSIDIARIES, | ) | |
| Plaintiff, | ) | No. 06-628 T |
| v. | ) | Judge Thomas C. Wheeler |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**STATUS REPORT**

In response to the Court's Order dated March 28, 2008, the parties were directed to file a Status Report by June 20, regarding the status of trial preparation and any proposed changes to the discovery schedule. A status conference in Washington, D.C. was scheduled for June 24, 2008 to discuss the progress of discovery and the need for any adjustment to the scheduling order. Defendant recently requested that Plaintiff agree to extend all dates by three months including the trial dates, and the parties have discussed whether any changes should be made to the current scheduling order. While Plaintiff is willing to discuss some extensions of the time to complete the deposition process, it opposes a general three month exception and a change in the trial date.

Given the substantial differences between the parties, the parties have contacted the Court to schedule an earlier status conference. The parties were directed to file status reports with the Court by noon June 4, 2008, in preparation for such status conference to be scheduled after the Court has an opportunity to review these status reports.

**Plaintiff's Position with Respect to Status of Discovery and Scheduling Order**

Plaintiff's position is that no general extension of the Scheduling Order that was made in January 2008, is appropriate. The parties have agreed to expand the number of depositions to 30. Plaintiff recognizes that not all depositions are likely to be completed within the existing schedule but that it is more appropriate to consider how long that extension should be once all of the fact depositions have been identified and a determination can be made of what depositions can be reasonably accomplished within the existing schedule. Similarly, Plaintiff requests that the Court leave unchanged the trial date set for February 3, 2009.

From the Plaintiff's perspective, there is no shortage of information regarding the leasing transactions in dispute. Indeed, the problem is too much information as a result of Defendant's very broad and expansive discovery requests. Given what has already been requested, it is difficult to understand what other information could remain that requires an additional three months to pursue.

As Plaintiff has noted previously, Defendant has been developing its legal theories regarding transactions similar in structure to those at issue here well before this particular case was filed. In February 2005, Defendant issued a notice setting forth its position on sale-leaseback transactions similar to those in issue. I.R.S. Notice 2005-13, 2005-1 C.B. 630 (February 28, 2005). A Coordinated Issue Paper dealing with these issues was released on June 29, 2005. Importantly, Defendant's pronouncements indicate that the Defendant bases its position on the basic structure rather than on minute details of individual transactions.

In addition, prior to the filing of this case, Defendant already had developed substantial factual information regarding each of the transactions at issue. In the course of its federal

income tax audits of Plaintiff, Defendant has been receiving detailed information regarding the leasing transactions at issue since at least 2002. Defendant has reviewed and disallowed the tax consequences of the leases in issue here in every taxable year between 1999 and 2004 and is currently auditing 2005-2006. As a result of these audits, when Plaintiff filed its Complaint on September 7, 2006, Defendant had in its possession the extensive documentation relating to all of these transactions, including the operative legal documents, credit approval reports, appraisals, pricing runs, etc., and had knowledge of the identities of all lessees and most, if not all, other participants in these transactions.

The amounts Defendant disallowed with respect to each transaction in each taxable year through 2004, the last year for which an audit is complete, match exactly what Plaintiff's records show as the tax effects of the transactions. Further, the Revenue Agent's Reports contained detailed schedules showing the tax and financial accounting treatment for each of these transactions. Plaintiff remains unaware of any basis for a dispute between the parties regarding the amounts in issue.

From Plaintiff's perspective, Defendant has not built on the foundation laid by the Internal Revenue Service in issuing its notices on leasing transactions or in its audit of Plaintiff. Instead, Defendant appears to be trying to obtain as much information as possible about all aspects of these transactions and then attempt to sort through that information to see what might relate to specific issues. As a result of this approach, Defendant has received substantial amount of documents, many of which are of limited, if any, usefulness.

At this point, Defendant has issued five sets of interrogatories, five sets of document requests, and two sets of requests for admissions. While Defendant has some disagreements with

Plaintiff's responses, Plaintiff has responded to four of the sets of interrogatory requests, four of the requests for documents and the first request for admissions. The time for responding to the remaining interrogatories, document requests and requests for admissions has not yet expired. In general, the interrogatories, document requests, and admissions seek information regarding all of the Leasing Transactions in issue. While Plaintiff has noted its objections to many of these requests as overly broad and vague, it nonetheless has endeavored to provide responsive information. The result has been hundreds of pages of narrative response and in excess of 230,000 pages of documents.

Defendant has also sought information from numerous third parties regarding these transactions. Plaintiff is aware of 39 document requests that have been served on third parties through subpoenas, including seven that have been issued since May 16th. These requests are very extensive. For example, the request recently issued to JP Morgan:

1. Seeks documents from 1996 through the present,
2. Requests all documents relating to any of the Transactions,
3. Requests all documents relating to promotional, marketing, or presentation materials, including, but not limited to, documents distributed at conferences or seminars, regarding the type of transaction described in IRS Revenue Ruling 2002-69, 20022 C.B. 760 or IRS Notice 2005-13, 2005-9 I.R.B. 630, or regarding purported sale-in, lease-out leveraged lease transactions, and
4. Requests all documents reflecting Morgan's established practices and procedures, if any, relating to its internal review, analysis, and approval of transactions similar

to the Transactions in which Morgan was involved or similar to any component of any such Transaction, including but not limited to nonrecourse loans, pledges, letters of credit, and payment undertakings.

The complete request to JP Morgan is attached as Exhibit A and is very similar to the requests that have been issued to the other third parties. As a result of these very broad requests to other third parties, Defendant has already received over 230,000 pages of documents from third parties and presumably will receive still more as a result of these new document requests.

When one thinks about the overall business of Plaintiff, it seems unlikely that this case will turn on finding a unique document buried somewhere in this mass of paper. Plaintiff is a bank that had as one of its lines of business a leasing company. That leasing company entered into a number of leveraged leases, including the transactions at issue, with numerous unrelated parties, including major transit agencies around the country. For each of these transactions, the terms of the deals are embodied in heavily negotiated legal agreements executed by Plaintiff and these unrelated parties. The significant documents related to these transactions have long been available.

We disagree with Defendant that a delay is justified by Plaintiff's time in responding to discovery requests. In particular, Defendant complains about our supplementing our responses to its first and second document production requests, which dealt primarily with all documents relating to due diligence with respect to the transactions and the tax and financial accounting for these transactions. As discussed in Plaintiff's motion to compel production, Plaintiff views the Second Request for Production as dealing with the financial and tax reporting of these transactions that had been previously examined without change. Nonetheless, Plaintiff set out to

answer various questions that Defendant had raised in April regarding the response that had previous been made.

Plaintiff by this time was also aware of the scope of the document requests to third parties, including the nine third party requests that were made on March 18, 2008. These were broader and more specific than the requests that Plaintiff had received. Accordingly, Plaintiff attempted to anticipate what additional categories of documents might ultimately be sought either under the existing requests or future document requests. Plaintiff attempted to cast a wide net to find possibly responsive documents.

In fact, many of the documents that Plaintiff produced as responsive to a liberal interpretation of the first and second requests, turn out to be responsive to Defendant's Fifth Request for Production for which the requested production date is June 15, 2008. A copy of the Fifth Request is attached as Exhibit B. For example, a substantial part of the production in May was the result of a decision to provide all e-mails with respect to the exchange of transaction documents even if those documents did not reflect any analysis or other specific information that would relate to due diligence on the part of Wells Fargo in evaluating the transactions. While these documents were only tangentially responsive to Request 3, they definitely would be responsive to Request 28 in the Fifth Request, which asks for:

> 28. All correspondence with, documents reflecting communication with, and other documents sent to or received from any participant, advisor, consultant, attorney, arranger or other third-party in connection with the Leasing Transactions.

Similarly, Plaintiff produced in the recent production all of the annual credit reviews for each of the Transactions for each year one was prepared through 2007, as being broadly responsive to

the financial and tax treatment of these transactions. Again these materials are much more clearly responsive to Request 29:

> 29. All documents concerning, reflecting or relating to the consideration, review or evaluation of the actual or potential risks, gain, costs, benefits or burdens of plaintiff's participation in the Leasing Transactions.

Similarly, Plaintiff's recent production included notice of insurance coverage and no default notices, which are now explicitly asked for in Request 39:

> 39. All notices and certifications sent to or received by any participant in the Leasing Transactions, including, but not limited to, notices regarding defaults, lack of defaults, payment of rent and payment of interest.

Hence, substantial portions of what Plaintiff has recently produced in an effort to respond to very broad and vague general requests actually anticipate the narrower, more specific requests that are not yet due. Hence, much of the volume of documents about which Defendant expresses concern have actually been provided to it earlier than would have been the case had Plaintiff waited until it received a more specific request.

Further, a review of each of these documents is not necessary to prepare for depositions or witnesses at trial. In many cases the documents are of a class of business records and the fact that they were prepared is more important than the individual content. For example, the annual credit reviews are reasonably long. However, the reports follow a common format and obtain the same types of information for the various transactions. In addition, much of the information is similar to the credit approval presentations done to approve the transactions initially. A review of a small handful of these reports would permit questions regarding the review process that was undertaken for the transactions that are documented in these reports. The specific conclusions

regarding the individual transactions in any particular annual review is unlikely to have any bearing on the case.

Another category of documents is the pricing runs. A pricing run is a computer-generated report that models many of the financial aspects of leasing transactions. A typical report will be about 30 pages of numbers although report size varies since one can select the specific information one wants the software to generate. These reports are used to negotiate the transactions and provide the basis for determining the specific amounts that are incorporated in the final operative documents. Plaintiff previously provided copies of the pricing reports contained in the file for each of the transactions. In addition, for each transaction, Plaintiff identified a copy of the pricing run that contained the financial information that corresponded to the terms of the executed document.

Recently, we identified that another set of pricing runs from a different source existed and since the request was for all copies of pricing runs, Plaintiff produced these as well — about 1,500 pages — even though they may well be duplicates. Since these reports are page after page of numbers, verifying if they are identical copies to what has already been provided is difficult, but it is also difficult to see why any differences would matter. These documents in themselves have no operative effect. While information is taken from them to prepare schedules for deal documents, it is the deal documents, not these pricing runs, which control.

Furthermore, the precise numbers on these reports are in general unlikely to be critical. Plaintiff does maintain that the yields on these transactions were attractive to it. The general range of yields is important, but whether the exact yield was 12.38%, 11.3% or 13.5% is unlikely to make any difference. Accordingly, differences in the exact financial results as shown in

various pricing runs that reflect changes in the details of the deals during negotiations are irrelevant. Hence, while the additional pricing runs are responsive, additional copies of these pricing runs are not going to add to any of the information already available. Furthermore, no one is going to read a pricing run beginning to end. Instead, the pricing runs are only likely to be needed to find a specific piece of data and as noted above, a set showing the information on the final documents has already been identified for Defendant. If these new ones have the same information, then nothing is added.

That is not to say that there are not instances where a document was discovered that had been previously overlooked or copying done incorrectly. When producing almost a quarter of a million pages in response to extremely broad requests, items will be missed. When such documents were found, they were produced.

In summary, while additional documents have been produced, many more had already been produced. The basic structure of these transactions has been known to Defendant for a long time. Defendant has continued to seek additional documents from Plaintiff and third parties. Many of the documents that Defendant is concerned about getting in May are more directly responsive to the discovery due in June. Plaintiff does not see a need to extend fact discovery generally or to delay the scheduled trial.

Plaintiff did decide to object in entirety to Defendant's Fourth Request for Production, copy attached as Exhibit C. In essence this request attempts to have Plaintiff obtain extremely expansive information regarding the foreign leasing transactions in issue from the foreign lessees. This request incorporates by reference any document that might be responsive to any

other document request served on Plaintiff. In addition, it sets forth substantial new requests, which clearly seem unreasonable. For example, 23(b)(vi) requests:

> vi. All documents relating to how any Foreign Lessee reported any of the Leasing Transactions for financial reporting and/or accounting purposes, including, but not limited to, the Foreign Lessee's financial statements for the calendar year in which such Foreign Lessee first entered into a Leasing Transaction through the present, the Foreign Lessee's annual reports for the calendar year in which such Foreign Lessee first entered into a Leasing Transaction through the present, and documents reflecting the accounting entries the Foreign Lessee made to account for the Leasing Transactions and the assumptions made in connection with the financial reporting, including general journals, ledgers, worksheets, underlying accounting workpapers, and communications with the Foreign Lessee's accountants;

Some of the requests are not even limited to the property subject to the leases in dispute. Request 23(u) seeks:

> u. All documents evidencing, substantiating, or describing any foreign Lessee's capital equipment expenditures for any time from the calendar year in which such Foreign Lessee first entered into a Leasing Transaction to present.

Similarly Request 23(v)(ii) seeks:

> ii. The size and location of each wireless subnetworks of such Foreign Lessee, including but not limited to the wireless subnetworks or any portions thereof that constitute any Leasing Transaction Property, for all times from the calendar year in which such Foreign Lessee first entered into a Leasing Transaction to present.

Plaintiff examined its rights under the operative documents for these transactions to request documentation from the foreign parties. While the language varies, there are provisions enabling Plaintiff to make requests for information. However, all of these are conditioned on the request being reasonable. While Plaintiff's initial reaction was to send the request "as is," it

ultimately decided that it was inappropriate to put this burden on a foreign party and that making such a request would reduce the likelihood of any response from the foreign party. It then considered whether it could unilaterally submit some more limited request, but concluded that it had no way of ranking in importance Defendant's request. Finally, Plaintiff decided the proper course was to object to this request and ask that Defendant make a more targeted request that Plaintiff could send to the foreign party.

The review of the documents and the decision process took some time. However, it is not correct that Plaintiff waited until the expiration of the 30 days to respond. The production date for the Fourth Request was May 28th and Plaintiff responded to Defendant on May 22nd. To date, Defendant has not proposed a narrower request. Defendant did, however, on May 20th, submit a request for the document related to Belgacom Mobile, S.A. pursuant to the treaty between the U.S. and Belgium.

Plaintiff opposes extension of the period for discovery and requests that a trial date of February 3, 2009, be kept. As noted above, Defendant has been gathering extensive information on the transactions in issue since at least 2002. As Defendant's Rule 26 disclosure indicates, Defendant's counsel had access to that material no later than April 16, 2007. Defendant's Rule 26 disclosure lists all the lessees, including all of the foreign lessees. Similarly, Defendant's Rule 26 recognizes that Defendant had documents provided in the audit, which included appraisals. In addition, Plaintiff's discovery response on July 30, 1997, identified the appraisers by transaction.

A Preliminary Scheduling Order was entered on March 27, 2007. Defendant has already had over a year to issue discovery and still has time before the end of fact discovery. As we

indicated in March, the time has come to take the information that has been gathered, focus on the materials relevant to the legal principles and proceed to trial. Essentially, nothing has changed the status since March that would merit changing the schedule. Extending discovery will only delay the day that the parties come to grips with the facts in the case while unnecessarily increasing the burden on the Plaintiff and third parties.

**Status of Possibility of Agreeing on Test Cases**

Defendant has recently expressed interest in the possibility of using test cases to resolve all of the transactions in the portfolio. The parties have made some substantial progress in these discussions, but as of yet have not been able to reach a final agreement on how many or exactly which transactions should be included. As Plaintiff understands the last discussion, the parties have tentatively agreed on one foreign transaction and one bus transaction but are in disagreement as to whether to include two or three rail transactions. Defendant wishes to include the California Department of Transportation Transaction. Plaintiff is willing to include this transaction, but does not regard it as sufficiently representative since it is the only transit transaction not approved by the Federal Transit Administration and, hence, wants to include two other rail transactions. Three rail transactions would also permit the inclusion of a light rail, heavy rail and subway system in the sample.

**Outstanding Disputes Regarding Defendant's Response to Plaintiff's Discovery**

Pursuant to the Court's Order, Defendant made a production in response to Petitioner's Second Request for Documents. As this production arrived on June 2, 2008, Petitioner has not yet had a chance to review this production for completeness.

With respect to Defendant's responses to Plaintiff's First Interrogatories and Request for Documents, the areas of dispute have been substantially narrowed through a combination of additional documents located by Defendant and the testimony at the deposition of the Federal Transit Administration under Rule 30(b)(6). A deposition of a former Federal Transit Authority employee, Paul Marx, has also been scheduled that may further limit the areas of dispute.

However, a portion of the dispute is still likely to require the Court's involvement. Defendant continues to maintain that it does not need to provide a Rule 30(b)(6) deposition or answer interrogatories regarding Qualified Transportation Property transactions that were approved by the Federal Transit Administration after the JOBS Act. These transactions were exempted from certain changes to the Internal Revenue Code and Defendant has acknowledged that it was the intent of Congress that those transactions receive the tax benefits that are in dispute here. Plaintiff expects that this testimony will establish that those transactions are indistinguishable from the ones in dispute here except for the dates the Federal Transit Administration approved the transactions. While these transactions occur after the years at issue here, Plaintiff regards the fact that Defendant has recognized that other transactions with all of the features in dispute here are, under the identical tax law provisions, entitled to the benefits in dispute here is highly relevant.

Defendant has also been unwilling to provide information regarding communications between the Federal Transit Administration and the IRS with respect to the Federal Transit Administration's approval of these transactions. The testimony and other documents provided have already established that the Federal Transit Administration had communications with the IRS in 1993 and concluded not to approve these transactions. It has also been established that the Federal Transit Administration and the IRS had communications in 1995 at which time the

Federal Transit Administration began approving these transactions provided that over the life of the transactions, the taxpayer made a net tax payment as a result of the transactions, i.e., the total taxable income realized is greater than the total tax deductions.

Accordingly, following the deposition of Mr. Marx, Plaintiff expects that it will be necessary to file a motion seeking to compel responses to at least these areas of discovery.

Respectfully submitted this 3rd day of June, 2008.

/s/ Joel V. Williamson
Joel V. Williamson
MAYER BROWN, LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 701-7229
Fax: (312) 706-9187
jwilliamson@mayerbrown.com

Attorney for Plaintiff