**EXHIBIT 5**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-628 T
(Judge Thomas C. Wheeler)

WELLS FARGO & COMPANY and SUBSIDIARIES,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

## UNITED STATES' FIFTH REQUEST FOR PRODUCTION

The United States requests, pursuant to Rules 26 and 34 of the Rules of the United States Court of Federal Claims (RCFC), that Plaintiff produce the documents described below for inspection and copying.

Consistent with the provisions of RCFC 34 that a production "request shall specify a reasonable time, place, and manner of making the inspection and performing the related acts, it is hereby specified that a representative of Plaintiff shall make such documents available for inspection and copying at the offices of Defendant's counsel, Cory A. Johnson, Room 8108, Judiciary Center Building, 555 4th Street, N.W., Washington, D.C. 20001 at 10:00 a.m., on June 15, 2008, or at such other time or location, and in such manner as is mutually agreed upon by both parties.

The documents produced shall be organized and labeled to correspond to the particular request to which they are responsive, and, as so organized and labeled, the documents shall be produced as they are kept in the usual course of business, to the extent possible. It is further requested that Plaintiff identify in its written response each document (or portion thereof) or category of documents withheld from production, and state with respect thereto the specific ground(s) for objection with sufficient particularity to permit the matter to be brought before the Court.

The definitions applicable to the United States' First Set of Interrogatories apply to the following Requests for Production. In addition, the following definitions shall apply in this request unless otherwise noted:

A. "Document" means and includes all materials or data subject to production under Rule 34 of the Rules of the U.S. Court of Federal Claims ("RCFC") and all writings or recordings within the meaning of Fed. R. Evid. 1001. The term shall be broadly construed to include (but shall not be limited to) correspondence, electronic mail, notes, notations, contracts, brochures, agreements, deeds, leases, letters, memoranda, checks, bank statements, reports, analyses, projections, studies, records, corporate minutes, financial statements, financial records, accounting or audit work papers (including permanent work papers), spreadsheets, transcripts, recordings, and all other types of written or documentary materials. It includes all originals, copies, and non-identical copies (whether by reason of handwritten notations thereon or otherwise), regardless of whether the information is stored on paper, in electronic form, or through any other medium.

B. The term "person" shall be construed to mean and include an individual, trust, estate,

partnership, company, corporation, governmental body, or other entity.

C. The words "identify," "identifying," or "identity":

(i) when used in reference to a natural person, include the full name, present home and business address, present or last known employer, and present business and home telephone numbers of the individual;

(ii) when used in reference to an entity other than a natural person, include that entity's full name, the present or last known address of its principal office or place of business, the type of entity (e.g. corporation, partnership, unincorporated association, etc.), and present business telephone number of that entity;

(iii) when used in reference to a document, include the (1) nature of the document; (2) the name of each author or person by whom the document was written, prepared, recorded, made, or signed; (3) the dates each person or author identified participated in the writing, preparation, recording, marking or signing of the document; (4) the organization or entity which issued or promulgated the writing; (5) the date of the document; (6) to whom it was addressed or furnished; (7) the number of pages in the document; (8) the subject matter of the document; and (9) the name and current or last-known business and residential address and telephone numbers of each person having custody, control, or possession of such document.

D. The term "Leasing Transactions" refers to all of the transactions identified in paragraphs 39 and 50 of the Complaint.

E. The term "plaintiff" refers to Wells Fargo & Company and Subsidiaries ("Wells Fargo"), and all predecessors, successors and presently or formerly affiliated entities.

F. The term "representatives" includes, but is not limited to, Plaintiff's counsel, employees, agents, and/or advisors.

G. The terms "you" and "your" means Wells Fargo and its representatives, and all presently or formerly affiliated entities.

H. The term "participants" refers to any participant in any of the Transactions, including, but not limited to, Plaintiff, other equity investors, banks, lenders, promoters, arrangers, advisors, consultants, and appraisers.

I. The term "Leasing Transaction Property" refers to the assets or property which were the subject of any of the Leasing Transactions, including but not limited to any assets or property which became the subject of the Leasing Transactions by virtue of any amendment or alteration.

J. The term "End of Lease Option" refers to any option or election concerning the use, lease or ownership of any Leasing Transaction Property subsequent to the closing date of any of the Leasing Transactions, including, but not limited to, any purchase option, lease renewal option, return option or service contract option.

The documents to be produced are as follows:

24. All documents submitted to or received from the Federal Transit Administration or United States Department of Transportation relating to the Leasing Transactions, including, but not limited to, correspondence and any statements, certifications or opinions concerning the effect on Federal income tax revenue of the Leasing Transactions.

25. All documents relating to or mentioning an approval by the FTA of any of the Leasing Transactions, or the effect or meaning of such approval.

26. All documents and work-papers concerning a calculation, estimate, certification or opinion of the effect on Federal income tax revenue of the Leasing Transactions.

27. All internal correspondence and documents reflecting communications (including email and memoranda) concerning the consideration, review and approval of the Leasing Transactions.

28. All correspondence with, documents reflecting communication with, and other documents sent to or received from any participant, advisor, consultant, attorney, arranger or other third-party in connection with the Leasing Transactions

29. All documents concerning, reflecting or relating to the consideration, review or evaluation of the actual or potential risks, gain, costs, benefits or burdens of plaintiff's participation in the Leasing Transactions.

30. All documents relating to an End-of-Lease Option of any of the Leasing Transactions, including documents concerning the benefits, burdens, costs, risks, exercise or likelihood of any such option.

31. All documents concerning an evaluation, review or analysis of plaintiff's "tax capacity" during the time period 1997 through 2002, and its search for, review of and participation in the Leasing Transactions in order to utilize that tax capacity. (See ¶ 57(f) of plaintiff's Complaint.)

32. All documents relating to conferences, seminars, meetings, and other events at which SILOs, LILOs, leveraged-leasing, or tax-advantaged leasing transactions were discussed.

33. All documents relating to conferences, seminars, meetings, and other events at which representatives of the Federal Transit Administration or United States Department of Transportation were present and innovative financing techniques or leveraged leasing involving public transit agencies were discussed.

34. All promotional or marketing materials, presentations, solicitations and other documents received from Capstar, Trinity, Allco Finance Corp., Cornerstone or other promoters, arrangers, or leasing consultants relating to SILO's, LILO's, or tax-advantaged leveraged leasing.

35. All documents that refer to, discuss, or relate to the inception, promotion, or marketing of the Leasing Transactions, including, but not limited to, all mandates and requests for bids or proposals.

36. All documents concerning the solicitation or referral of participants for the Leasing Transactions, including, but not limited to, documents reflecting or referring to how or why plaintiff or any other participants, advisors, arrangers, appraisers or consultants, were contacted, selected or became involved.

37. All documents related to the negotiation of any of the terms of any of the Transactions, including but not limited to any draft of any of the Leasing Transaction governing documents.

38. All documents related to plaintiff's internal consideration, analysis, and approval of any of the Transactions or any part thereof.

39. All notices and certifications sent to or received by any participant in the Leasing Transactions, including, but not limited to, notices regarding defaults, lack of defaults, payment of rent and payment of interest.

40. Documents reflecting plaintiff's criteria, guidelines or policies for evaluation, review, and approval of leasing transactions, and for the monitoring and review of ongoing participation in leasing transactions, including any "Front End Guidance," applicable to transportation assets, QTE assets and telecommunications/ electronic equipment assets for the period 1992 through the 2005.

41. All "Pipeline Reports" for the period 1992 through 2005.

42. Documents setting forth plaintiff's "stated criteria" for leasing transactions. (See p. 18 of Plaintiff's First Supplemental Response to United States' First Set of Interrogatories.)

43. Documents related to or reflecting plaintiff's inspection of the Leasing Transaction Property at any time from 1997 through the present.

44. Documents reflecting the disposition and current use of the Alcatel telecom equipment for which the Nokia equipment was substituted in the Belgacom Leasing Transaction.

45. Documents reflecting a direction or request by the Federal Transit Administration that any terms be included or changed in the Leasing Transactions' operative agreements and documents.

Respectfully submitted,

*s/ Cory A. Johnson*
CORY A. JOHNSON
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
TEL: (202) 307-3046
FAX: (202) 514-9440
Cory.A.Johnson@usdoj.gov

JOHN A. DICICCO
Deputy Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief
JENNIFER P. WILSON
Trial Attorney
JOSEPH B. SYVERSON
Trial Attorney
RICHARD H. BOWLES
Trial Attorney

*s/ Steven I. Frahm*
Of Counsel

May 14, 2008

CERTIFICATE OF SERVICE

I certify that service of the foregoing document has, this 14th day of May, 2008, been made on counsel for the plaintiff by emailing and mailing a copy thereof, in a postage prepaid envelope, to the following address:

Joel V. Williamson
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606

____________________________
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6440
Fax (202) 514-9440