**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**No. 06-628 T**
**(Judge Thomas C. Wheeler)**

| | |
|---|---|
| **WELLS FARGO & COMPANY and SUBSIDIARIES,** | ) |
| **Plaintiff,** | ) |
| **v.** | ) |
| **THE UNITED STATES,** | ) |
| **Defendant.** | ) |

**REPLY BY THE UNITED STATES TO PLAINTIFF'S RESPONSE TO STATUS REPORT AND MOTION TO ENLARGE THE CURRENT SCHEDULE**

Defendant has moved for a short enlargement of the discovery period in this complex case involving 27 separate transactions, due to difficulties obtaining requested documents and information from plaintiff, and to provide defendant with the time needed to review thousands of recently produced pages and to prepare for and conduct depositions and complete foreign discovery. Defendant will be severely prejudiced without this enlargement. Plaintiff, however, objects to this enlargement and seeks to maintain the existing schedule, notwithstanding that it is unable to identify any prejudice that would result from a brief enlargement. As explained further below, a brief enlargement of the current schedule is warranted, and defendant's motion should be granted.

**A. Plaintiff has not identified any prejudice that would result from a brief enlargement of the schedule, but the United States will be significantly prejudiced if the schedule is not enlarged.**

Plaintiff cites no prejudice that would result from a three-month enlargement of time. Plaintiff contends only that it wants to "tell its story" before the United States "has a chance to prevail in a series of weaker cases and then claim this is just one more in the chain." (Plaintiff's Response, p. 22.) In so many words, the only concern plaintiff expresses is that the government will win in cases whose bearing on this case will be disputed, and that this Court will be unable to fairly resolve the parties' competing contentions.[1] Plaintiff's desire to have its case decided before additional cases are decided in favor of the government (as have all prior cases involving SILO/LILO transactions) is not a valid reason to deprive the United States of an adequate opportunity to conduct discovery in this case.[2] If plaintiff's "story" in this case is as "particularly

---

[1]Four courts have now addressed transactions defendant views as very similar to those in this case, with similar claimed tax benefits. In *BB&T Corp. v. United States*, 2007 WL 37798 (M. D. N.C. 2007), the United States District Court for the Middle District of North Carolina granted summary judgment for the United States in a case involving a lease-in, lease-out transaction ("LILO"), disallowing the tax benefits claimed. The United States Court of Appeals for the Fourth Circuit just recently affirmed that summary judgment decision. *BB&T v. United States*, 523 F.3d 461 (4th Cir. 2008). In *Fifth Third Bancorp v. United States*, No. 05-350, Docket entry 172, (S.D. OH., April 18, 2008), a jury recently returned a verdict for the United States in another similar LILO case, again disallowing the claimed tax benefits. Finally, a few weeks ago, the United States District Court for the Northern District of Ohio issued its decision disallowing the claimed tax benefits in a SILO transaction similar to those in this case. *See AWG Leasing Trust, KSP Investments, Inc., as Tax Matters Partner v. United States*, No. 07-857, Docket entry 179 (N.D. OH., May 28, 2008) (AWG was a partnership between two banks.)

[2]The United States is aware of two cases involving transactions defendant views as very similar that may be decided in the next several months. The first case, *Consolidated Edison Co. v. United States*, Case No. 06-305 T, involves a LILO transaction and was tried by Judge Marian Blank Horn in October and November, 2007. Post trial briefing will be completed this month, and a post trial argument is scheduled for July. The second case, *Altria Group, Inc. v. United States*, Case No. 06-cv-9430, involves several SILO transactions and may be resolved by cross motions for summary judgment now pending in the Southern District of New York.

compelling" as it contends, plaintiff will not be prejudiced in the slightest by enlarging the current schedule by three months. We are confident that the Court is capable of deciding whether the transactions at issue in this case are distinguishable, and thus warrant different tax treatment, whether there are the present four decided cases or more. Indeed, there are advantages to the Court from having additional decisions in other cases addressing these kinds of transactions and similar claimed tax benefits. The developing case law will provide the Court with additional authorities to consider and may assist the parties and the Court in resolving this case on summary judgment.

By contrast, the United States will be prejudiced significantly if it is not afforded additional time to complete the discovery needed to defend this case. The United States must review more than 65,000 pages of documents that plaintiff recently produced. In addition to the 35,000+ pages discussed in our June 4 status report and motion for enlargement, plaintiff produced an additional 30,000 pages of documents on Monday, June 16, 2008, in response to the United States' fifth request for production of documents. Plaintiff admits that it did not produce every document responsive to the requests we served six months ago, and is now producing documents in response to more specific requests that it admits are merely subsets of the earlier requests. The United States served the more specific requests recently because, after reviewing the documents initially produced, it appeared that plaintiff had not produced all categories of documents requested. Plaintiff now confirms that this concern was warranted. Plaintiff's decision to produce documents only after the United States asked for them a second time, with greater specificity, has delayed the United States. We must now review more than 65,000 pages of documents (in addition to the thousands of pages of document recently received from third

parties) in order to adequately prepare for depositions.

We do not expect to depose 100 witnesses, which plaintiff misleadingly suggests is our intention. (Plaintiff's Response, p. 21.) In fact, the United States' extensive document and written discovery will enable us to limit the depositions we need, as the written discovery has provided information permitting us to identify five representative transactions on which to focus. This salutary written discovery has taken a substantial amount of time, and a large number of relevant documents have been produced – many of which were produced quite recently by plaintiff. The selection of representative transactions took a substantial amount of time as well, but both parties seem to agree that the process was worthwhile, and will produce efficiencies in resolving this case. Having taken the time to proceed thoroughly and logically with discovery and the selection of representative transactions, the parties are now in a position to narrowly focus the depositions and substantially reduce their number.

We are working to further reduce the number of depositions, even though, with respect to the five representative transactions, the parties have collectively disclosed more than 60 potential witnesses who are current or former employees of plaintiff and other participants in the transactions, including banks, appraisers, promoters, and arrangers. The United States is continuing to review all of the nearly 1 million pages of documents produced to date to determine which individuals are likely to have the most relevant discoverable information. Enlargement of the schedule would allow the United States to identify the crucial deponents and prepare adequately for those depositions. Because the witnesses are located throughout the country and in Europe, the completion of depositions (whether the total number ends up being 10, 20, or 40) will require a substantial amount of travel and time. However, that time will be

well spent, because it will allow the parties to proceed with the depositions logically and thoroughly (as we did with prior discovery and selection of representative transactions). In addition, if there is a trial in this case, the parties will be able to streamline their witness lists and examinations on the basis of meaningful depositions, conducted after an opportunity to review and question witnesses about the many relevant documents produced by plaintiff and the third parties who were involved in the transactions.

Some of defendant's necessary discovery is foreign discovery, which plaintiff admits is "more difficult" than domestic discovery. (Plaintiff's Response, p. 13.) The United States faces even greater difficulty conducting foreign discovery than plaintiff, which acknowledges its own difficulties. Plaintiff, unlike defendant, can expect at least some level of cooperation from the foreign entities with which it undertook the transactions.

Despite recognizing the difficulty inherent in conducting foreign discovery, plaintiff did not identify the Belgacom transaction to the United States as one of its selections for a representative transaction until March 2008. As soon as possible after that, the United States engaged in several, different discovery efforts to quickly obtain information from the foreign entities involved in that transaction (the foreign counterparty and banks). Those efforts have included a treaty request to the Belgian authorities, a document production request to plaintiff, a request to plaintiff to comply with RCFC 26(a) and provide contact information for the foreign witnesses disclosed, and subpoenas to U.S. branches of the foreign banks involved. To date, none of those efforts has been availing; the United States has not received any documents or information from plaintiff or any other source. The United States intends to pursue this discovery to the extent possible in order to rebut the claims we expect plaintiff to make, but it

will take time. Since Belgacom is one of the representative transactions, and was initially selected by plaintiff, defendant is entitled to conduct discovery relevant to this transaction. That discovery should not be arbitrarily curtailed.

Plaintiff has indicated that it is willing to discuss extending the schedule for depositions (at least of the foreign witnesses), but is unwilling to extend the complete schedule. (Plaintiff's Response, p. 22.) It is not feasible to extend only the fact discovery deadline to accommodate the large number of depositions without also extending the expert discovery deadline and trial date. Because the fact discovery in this case will serve as the predicate for the expert opinions, the United States needs to complete fact discovery before its experts can prepare and exchange their reports. Accordingly, expert discovery should not be truncated or overlap with continued fact discovery. As explained above, plaintiff offers no good reason to compromise the remaining discovery in this case – fact and expert. A modest enlargement of the schedule will produce efficiencies in the form of more focused and informed discovery, and will not prejudice plaintiff.

**B. The discovery sought by the United States is relevant and necessary.**

Plaintiff now contends that most of the discovery sought by the United States is irrelevant and unnecessary in light of the IRS Notice and Coordinated Issue Paper addressing SILO transactions, and the IRS examination of plaintiff's transactions. (Plaintiff's Response, p. 4.) Plaintiff's concern regarding defendant's need for discovery is suspect, as neither plaintiff nor any third party has challenged the relevance of discovery we have served to date, and the future discovery we have described is just the logical followup (depositions) to what we are learning from document discovery. If plaintiff's actual concern is that the United States is seeking information not relevant for discovery purposes, then it can state its objections when such

discovery is pending, and either file a motion for a protective order or force the United States to move to compel. But plaintiff has not done that. Instead, plaintiff is attempting to limit the United States' opportunity to investigate and rebut its claims by requesting arbitrary and unnecessary limits on the time available for discovery.

Plaintiff's suggestion that the United States already has all the information it needs by virtue of the IRS examination (Plaintiff's Response, pp. 2, 4-5) is simply not true. In fact, the list of third party document subpoenas on page two of plaintiff's response brief demonstrates this point. All of the 39 third parties plaintiff listed were involved in various capacities in plaintiff's transactions (*e.g.* arrangers, appraisers, banks, counterparties), but the IRS did not conduct the depositions and or request the documents from these parties that the United States is now seeking.

In any event, this tax refund suit is a *de novo* proceeding in which the Court will determine the tax consequences of the transactions in which plaintiff engaged by determining the facts relevant to the transactions, and applying the relevant Code sections, Treasury Regulations, case law, and any other relevant, published official guidance. *Cook v. United States*, 46 Fed. Cl. 110, 113 (2000) ("In tax refund suits, factual issues are tried *de novo* in this court, with no weight given to subsidiary factual findings made by the Service in its internal administrative proceedings"); *United States v. Nordberg*, 1996 WL 170119, *2 (D. Mass. 1996) ("[A] challenge to a tax determination results in a trial *de novo* rather than a review by this Court of an existing administrative record . . . ."); *R.E. Dietz Corp. v. United States*, 1990 WL 110936, *7 (N.D.N.Y. 1990) (court's role in taxpayer refund action is not to "sit in review of the determination by the IRS; rather, . . . the court, as trier of fact here, listens to and evaluates evidence so as to ultimately

determine whether the taxpayer has proved by a preponderance of the evidence that the assessment is wrong"); *cf. Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 328 (1974) (deficiency proceeding is *de novo*, and determination as to tax liability "must be based on the merits of the case and not any previous records developed at the administrative level").

Defendant's duty is to investigate the facts, and consider the legal theories, that should be presented to this Court to reach the proper result. The work done during administrative proceedings by the Internal Revenue Service certainly is informative, but the United States is not limited by either the particular matters investigated by IRS employees, or the inherent limits of their authority (and time) to secure responsive information. While the United States has no desire to reinvent the wheel, in preparing its defense in this *de novo* proceeding, the United States may rely on facts and theories not used by the IRS to challenge the deductions plaintiff claimed in connection with the SILO transactions. *See*, *e.g.*, *Cook*, 46 Fed. Cl. at 114-115 ("[C]ourts have repeatedly held that the government may support a tax assessment based on any admissible evidence, including that first disclosed in discovery, and, conversely, need not rely solely, or at all, on the evidence reviewed administratively by the Service"); *Fowler v. United States*, 2002 WL 1310286, *1 (Fed. Cl. 2002).

The United States has been collecting hundreds of thousands of pages from plaintiff and third parties, because we consider the information relevant to developing a case for trial and rebutting plaintiff's claims. For example, we have already obtained information from plaintiff through discovery in this case that rebuts their contention that these transactions were simply an unexceptional part of their traditional leasing business. The United States is not, as plaintiff contends, "trying to gather every scrap of paper on each of the Transactions in dispute from every

conceivable party" for the pleasure of reviewing boxes upon boxes of documents. To the contrary, we are in the process of collecting information not previously obtained by the IRS in order to evaluate the 27 different transactions that plaintiff has been living with for as long as 10 years; agree to representative transactions; and determine whom to depose. The United States' case at trial will rest on evidence developed by counsel for the United States through discovery in this action, not whatever the IRS may have said about SILO transactions generally in the Notice or Coordinated Issue Paper, or what IRS Revenue Agents may have determined several years ago during their examinations.

**C. Plaintiff has been inconsistent in characterizing what is at issue in this case.**

In opposing defendant's enlargement, plaintiff contradicts its earlier contentions. On the one hand, it claims that defendant's discovery is unnecessary, because the case turns on the "structure" of the SILO transactions, which are well known to the United States. (*See, e.g.*, Plaintiff's Response, pp. 4-5, 19.) Plaintiff claims that a stipulation of facts, detailing the "structure" could streamline discovery, but has proposed no such stipulation. On the other hand, plaintiff argues that the facts of the transactions are unique and important and therefore intends to present transaction-specific facts at trial.

The following examples illustrate plaintiff's fact-specific view:

- Its desire to demonstrate that its transactions are different than those in the government's other, supposedly weaker, cases nearing a decision.
- In its June 4, 2008, status report (at p. 12), plaintiff indicated that representative transactions (or "test cases") would include a light rail, heavy rail, and subway system, in addition to a foreign transaction and a bus transaction. And, in discussions with the United States, plaintiff has insisted on the inclusion of two rail transactions – WMATA and NJT – because it thinks that each transaction has facts it wants to present that are somehow different.

- In its June 13, 2008, response to the United States' motion for enlargement (at p. 20), plaintiff states that it "wanted to keep its options open [with respect to representative transactions] since additional information might become available that would lead it to make a different choice."

- In objecting to the first set of requests to admit served by the United States, plaintiff stated the 27 "Transactions were individually negotiated, and they are distinct in their facts and terminology . . . ." Similarly, plaintiff stated in its June 13, 2008, response to the United States' motion for enlargement (at p. 19) that the "Transactions are individually negotiated and have unique factors . . . ."

Plaintiff can't have it both ways. It can't seek to present its "unique" facts and simultaneously deny defendant the opportunity to investigate them on the ground that the "structure" is key. Plaintiff, if it wishes, is entitled to tell what it will claim is its own "particularly compelling story" (apparently involving evidence of factual distinctions between transactions). But it is not entitled to cut short discovery so it can do so before other cases are decided, while simultaneously denying the United States the opportunity to investigate and perhaps rebut plaintiff's story

**CONCLUSION**

For the foregoing reasons in addition to those stated in our initial status report and motion, the United States respectfully requests that the Court adjust the current schedule by three months, and set a new schedule providing for the completion of fact discovery by October 31, 2008; initial expert disclosures on December 15, 2008; rebuttal expert disclosures on February 1, 2009; and completion of expert discovery by March 1, 2009. The United States also requests that the Court set a post-discovery conference in early March, 2009, and a new date for trial.

Respectfully submitted,

*s/ Cory A. Johnson*
CORY A. JOHNSON
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
TEL: (202) 307-3046
FAX: (202) 514-9440
Cory.A.Johnson@usdoj.gov

JOHN A. DICICCO
Acting Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief
JENNIFER P. WILSON
Trial Attorney
JOSEPH B. SYVERSON
Trial Attorney
RICHARD H. BOWLES
Trial Attorney

*s/ Steven I. Frahm*
Of Counsel

June 20, 2008